NORTHWESTERN NATIONAL INSURANCE
COMPANY *v.* Charles B. STANLEY

CA 79-256                                          598 S.W. 2d 439

Court of Appeals of Arkansas
Opinion delivered April 23, 1980
Released for publication May 14, 1980

*Wright, Lindsey & Jennings,* for appellant.

*Davidson, Plastiras, Horne, Hollingsworth & Arnold,* Ltd. for appellee.

JAMES H. PILKINTON, Judge. On June 9, 1977, Northwestern National Insurance Company issued a renewal of a standard home owner's policy to appellee, Charles B. Stanley. The policy insured certain jewelry, as scheduled, and a premium of $189.00 was collected for the coverage of this class of personal property. One particular 2.94 carat diamond ring was insured for $7,000 and was described in the schedule as "one lady's 14K 2.94 Ct. diamond in 6-prong solitaire mounting."

Mr. Stanley had carried this same coverage for a number of years, and the 2.94 carat ring had been insured for $7,000 under prior policies, and had been worn by the wife of the appellee. Mrs. Stanley died sometime prior to June 9, 1977, when the renewal policy was issued. After his wife's

death, the 2.94 carat diamond was removed from the lady's mounting and was reset in a gentleman's mounting so Mr. Stanley could wear it. At the time the policy was renewed, no mention was made of the fact that the diamond had been remounted, or that Mr. Stanley was now wearing it, and the ring was described in the renewal policy schedule as it had been in previous policies.

There was an armed robbery on June 20, 1977, at the Stanley retail jewelry store. In addition to other articles taken from the store, the robber took a number of pieces of jewelry personally owned by Mr. Charles B. Stanley. One of the items stolen was the 2.94 carat diamond ring which Mr. Stanley was wearing when the robbery took place.

Mr. Stanley filed a claim with Northwestern National for $7,000 for the theft of the 2.94 carat diamong ring, and also for $2,500 for another ring listed in the schedule of jewelry. The appellant insurance company did not seriously dispute its liability for $2,500, the amount of the insurance on the other ring in question described as one 14 carat white gold man's diamond ring, but Northwestern National denied liability in any amount for the 2.94 carat diamond ring. It was the position of Northwestern National that it had provided coverage for loss due to theft of a "lady's ring." Appellant contended that it did not provide coverage for loss of a man's ring, which was what was stolen. Appellant therefore contended that the 2.94 carat diamond ring was not covered by the policy since it had been remounted from a lady's setting to a man's setting. This suit was then filed, pleadings were joined, and the issue of coverage was presented to the jury. The verdict was rendered in favor of appellee for $2,500 covering the scheduled 14 carat gold man's diamond ring, about which there was little controversy, and $7,000 for the 2.94 carat ring in controversy. Judgment was entered on the verdict, and appellant has appealed.

I

Appellant first argues that the trial court erred in refusing to grant the defendant's motion for a directed verdict.

It is well settled that in considering a motion for directed verdict, a trial court must view the evidence and all reasonable inferences that can be made from the evidence in the light most favorable to the party against whom the directed verdict is sought. *Housing Authority of the City of Texarkana* v. *E. W. Johnson Construction Company, Inc.,* 264 Ark. 523, 573 S.W. 2d 316 (1978) and cases there cited.

In this case the trial court was correct in refusing to grant the defendant's motion for a directed verdict. Contracts of insurance should receive a practical, reasonable and fair interpretation consonant with the apparent object and intent of the parties viewed in the light of their general object and purpose. The jury was entitled to consider the contention of appellee that a reasonable construction of this insurance policy indicates it was the clear intention of the parties to insure the 2.94 carat center diamond. It is undisputed that the diamond stolen was the same diamond that was insured in the renewal policy. A problem as to identification of an item to be insured could arise in many instances, and descriptive words must necessarily be used in the policy to be sure the insured and insurer have agreed upon the particular item covered. In this case, the policy under the heading "Jewelry Schedule" describes this diamond of a particular size as set in a 14 carat 6-prong lady's solitaire mounting. Removing this diamond from the lady's mounting and resetting it in the gentleman's mounting did not, as a matter of law, alter the fact that the 2.94 carat diamond could still be insured. There is no provision in this policy that the diamond could not be reset and the insurer could have written this prohibition into its policy if that had been its intention. Certainly the type of mounting could not in itself work a forfeiture of the coverage under the circumstances here. *Brown* v. *International Service Insurance Company,* Court of Appeals of Texas, 449 S.W. 2d 491 (1970). The evidence shows that the 2.94 carat diamond had exactly the same value in both settings. According to the testimony, the diamond was worth $7,000 when first insured, and was worth $12,500 when the renewal policy was written. The value of the lady's mounting was shown to have been $50, and the value of the man's mounting into which it was reset was shown to have been $100, inconsequential in both instances.

In dealing with a different type of insurance, the Arkansas Supreme Court said in *Old Republic Insurance Co.* v. *Alexander,* 245 Ark. 1029, at 1034, 436 S.W. 2d 829 (1969):

> The materiality to the risk of a fact misrepresented, omitted or concealed is a question of fact so long as the matter is debatable. It is a question of law only when so obvious that a contrary inference is not permissible. (Citing cases). This principle is applied to questions pertaining to acceptance of risk as well as those relating to hazard assumed.

The above principle also applies in the case before us. It is quite evident that the testimony raised an issue for the jury as to whether the 2.94 carat diamond ring in question as remounted was, in fact, covered by the policy. That issue was submitted to the jury under instructions which are not questioned on appeal. Therefore, we find no merit in appellant's argument that the court should have granted its motion for a directed verdict.

II

Appellant also contends that even if the trial court was correct in submitting the question of coverage to the jury as a fact question, then the judge erred in excluding certain relevant evidence submitted by it pertaining to the issue. Northwestern National proffered the testimony of Ms. Ellen Jennings, one of the company's underwriters. She would have testified, if permitted to do so, that the insurer's underwriting rules at the time of the last renewal of the Stanley policy placed a limit of $2,500 on insurance for a single item of men's jewelry and a limit of $7,500 on insurance for a single item of women's jewelry. She offered to explain the reason for this difference based upon her knowledge and experience as an underwriter. It was her opinion as an expert that the risk of loss of men's jewelry is greater than women's jewelry. She would have testified that experience in the underwriting field has shown that men are more likely to remove their jewelry during the course of a day's activities and lose it. She said women tend to leave their jewelry on once they have put it on. Men also would normally be in more places where they

would be subject to a loss. They are out in the public more and seen more with the jewelry. In Ms. Jennings' opinion as an underwriter, men are more prone to lose jewelry than women.

Appellant says that the failure of Mr. Stanley to disclose that the ring had been remounted, and was being worn by him, was material to the risk assumed by it in the renewal policy, and was of such a nature that it, in good faith, would not have accepted the risk for more than $2,500 if correctly apprised of the facts.

The import of the proffered testimony was not that the company would have rejected the renewal coverage on the 2.94 carat diamond ring entirely had it known the diamond had been remounted and was being worn by Mr. Stanley, but to show that appellant would have limited the coverage to $2,500 if the disclosure had been made.

It was the trial court's opinion that this proffered testimony was immaterial (as the ring in question was not lost through the carelessness of Mr. Stanley), and was an effort to modify a written contract by oral evidence. The court excluded the offered evidence as inadmissible.

Whether this type of evidence is admissible depends upon the particular case at hand. 7 Wigmore, *Evidence* §§ 1946-1947 (1978). In his discussion, Wigmore cites *Hartford Protection Ins. Co.* v. *Harmer*, 2 Ohio 452, where it is stated:

> It is . . . impossible to say that the opinions of witnesses are never to be received in determining the materiality of facts not disclosed; much less can it be said that they are to be received in all cases. In each case it must depend on the nature of the inquiry . . .

In the case at bar, perhaps the *reason* for the underwriting rule would be immaterial. Be that as it may, the underwriting rule itself would be relevant on the question of whether appellant would have limited the coverage to $2,500 if it had known of the remounting, and that the ring was then

being worn by Mr. Stanley. We do not consider the proffer of this evidence to be an effort to engraft a provision onto an executed contract which was not a part of the written agreement. This evidence was material here merely as throwing light on whether or not appellant would have written the contract (for more than $2,500 on this particular ring) if disclosure had been made. Thus whether the insured knew, or did not know, of the underwriting policy is immaterial to the inquiry here. *Wigmore on Evidence, supra,* after defining increase of risk as "actual increase of danger", says:

> Thus we are in no way concerned with the question of actual increase of danger. Perhaps it might be clear that the circumstances in the case in hand did not actually increase the danger; but if nevertheless it fell within a class of circumstances scheduled by the insurer (for whatever reason seemed best to him) as increasing the danger, it would "increase the risk . . . "

Appellant had the right to adopt the underwriting policy limiting the coverage on a single item of men's jewelry to the sum of $2,500 for any reason, or for no reason at all. If it had such an underwriting policy, it was entitled to place that information before the jury, under the circumstances of this case, for the jury's consideration along with all of the other competent evidence. Since under the circumstances existing it would have been appropriate for this information to have been considered by the jury, we must hold that the trial court erred in excluding it. It was certainly relevant to the fact question that the jury was called upon to decide. Rule 401 of the Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979). It is undisputed that appellant had in the same schedule insured another ring, in a man's mounting, for only $2,500.

Under the circumstances in this case, if the proffered testimony as to the underwriting practice had been admitted, and if believed by the jury, appellant would still have been subject to a judgment for the $2,500 coverage on the 2.94 carat diamond ring. In a situation such as this one, where the minimum amount can be determined for which appellant would be liable under its own theory of the case, it would be

proper to permit appellee to remit down to that figure. Hence the judgment will be affirmed if a remittitur of the excess above $2,500 for the 2.94 carat diamond ring is filed within 17 days from the date of this opinion; otherwise the judgment will be reversed and the cause remanded for a new trial.