REED *v.* REA-PATTERSON MILLING COMPANY.

4-2766

Opinion delivered December 5, 1932.

*Partain & Agee,* for appellant.

*Roy Gean,* for appellee.

McHANEY, J. Appellee sued appellants in one count of the complaint on open account in the sum of $847.88, and in another count on a promissory note in the sum of $1,276.85, for flour sold and delivered by it to them. Appellants do not dispute the amount of the indebtedness, but defend on the ground, first, that the last car of flour bought was damaged, unfit for use and was not of the quality expressly warranted by appellee, with the result that a part of the flour remained unsold and unsalable, and a part was returned by their customers, a total of less than fifty sacks of forty-eight pounds, worth, at retail, $1.15 per sack; and, second, that the flour they did sell, and which was not returned by their customers, was of such inferior quality that it caused them the loss of about thirty customers or more, entailing a consequent damage to them of $5,000 in loss of future profits, good will, etc., for which amount judgment was prayed in a cross-complaint. They also claimed damages to the amount of the purchase price of the flour because of its worthless condition, which they claimed in offset of their indebtedness.

The court sustained a demurrer to the cross-complaint for damages for loss of future profits on customers lost, and for damages to good will, and refused to permit any proof in support thereof. At the conclusion of the testimony, appellee offered to abate its·claim to the extent of 50 sacks of flour at $1.15 per sack, and the court directed a verdict for it for the balance, all over the objections and exceptions of appellant.

It is undisputed that appellants had on hand less than 50 sacks of 24's and 48's of all flour bought from appellee that he either did not sell or that were returned to him. All the other flour had been sold at the full retail price, and no customer had asked for or been refunded the purchase price therefor. Appellants say the flour was expressly warranted to be absolutely satisfactory in every way. Mr. T. Guy Reed testified: "Mr. Roy Fornin, agent for this State, and Mr. Evans (meaning appellee's agents) stated in front of our store that any flour that was not absolutely satisfactory in every way could be returned." He further testified that it was with that understanding that he bought the flour. Since appellees have made good that warranty by giving credit for the fifty sacks of flour, it is difficult to perceive why it should be held liable for the difference between the value of the flour received and its value if it had been as warranted. Appellants did not return, or offer to return, any of the flour to appellee. No witness testified that the flour was damaged when received by appellants, but, assuming this to be the effect of the testimony, the express warranty, also assuming there was one, was that, if it was not satisfactory in every way, it might be returned. But appellants returned no flour to appellee, and made no complaint about the flour in any way until this suit was brought. They were buying from appellee and selling to their trade about one car per month. The last car, the one in controversy, was delivered February 9, 1931. The note which is the basis of the second count in the complaint was not executed until April 1, 1931, and in the meantime, and long after the flour had been sold, appel-

lants wrote appellee regarding their indebtedness to it, but no claim was made that the flour was unsatisfactory.

Moreover, this. is a sale by one dealer to another, and, as said in *Nelson* v. *Armour Packing Co.*, 76 Ark. 352, 90 S. W. 288: "In the sale of provisions by one dealer to another in the course of general commercial transactions, the maxim *caveat emptor* applies, and there is no implied warranty or representation of quality or fitness." But see exception to this rule in *Bunch* v. *Weil*, 72 Ark. 343, 80 S. W. 582. Appellants cannot therefore base their action on implied warranty. The only warranty attempted to be proved was an express one, as already stated, and, of course, there could not be both an express warranty and an implied warranty of fitness or satisfaction in the sale of the flour. "The reason is," said this court in . *J. S. Elder Grocery Co.* v. *Applegate*, 151 Ark. 565, 237 S. W. 92, "that, if there was an express warranty upon this subject, it would govern as being the contract between the parties. There would be no room for an implied warranty if there was an express warranty on the same subject." Reliance is placed on *Hixon* v. *Cook*, 130 Ark. 401, 197 S. W. 698, but it has no application here. This is a sale from dealer to dealer. ·

For the same and other reasons appellants were not entitled to recover future profits, or loss of customers, or damage to their business or for loss of good will. The express warranty, assuming it to be established by the evidence, precludes it. Such damages were not in the contemplation of the parties. They were not included in the contract by the express warranty. Unsatisfactory goods might be returned for credit. This appellants have received, and they are in no position to claim more. Such damages are also too speculative, remote and uncertain. 55 C. J. 1190, § 1166; *Goodell* v. *Bluff City Lumber Co.*, 57 Ark. 203, 21 S. W. 104; *Bunch* v. *Weil*, 72 Ark. 343, 80 S. W. 582.

The court correctly instructed a verdict for appellee, and this judgment is accordingly affirmed.