## HOUSING AUTHORITY OF THE CITY OF TEXARKANA, ARKANSAS *v.* E. W. JOHNSON CONSTRUCTION COMPANY, INC.

78-86                                          573 S.W. 2d 316

Opinion delivered November 6, 1978
(Division I)

524

*Young, Patton & Folsom,* by: *David Folsom,* for appellant.

*David J. Potter,* of *Potter & Potter,* for appellee.

GEORGE HOWARD, JR., Justice. The paramount issue for resolution in this appeal is whether the trial court committed reversible error in awarding a judgment, sitting without a jury, to appellee-contractor in the sum of $12,938.12, including interest at the rate of 10%, predicated upon the following findings:

1. Appellant breached its contract with appellee in requiring a duplicate bond prior to releasing the retainage.

2. Appellant breached the warranty of the plans and specifications submitted to the appellee resulting in cardinal changes in the contract, causing a delay of sixty-eight days in the completion of the job, although the work to be performed was completed five days ahead of the scheduled completion date contained in the contract.

Stated another way, we are to decide if the holding of the trial court is supported by substantial evidence. An affirmative response to this question requires an affirmance, while a negative response imposes a duty to reverse.

## THE FACTS

On March 12, 1973, appellant, the Housing Authority of the City of Texarkana, Arkansas, hereafter referred to as owner, entered into a contract with appellee, E. W. Johnson Construction Company, Inc., hereafter referred to as contractor, whereby the owner would pay to the contractor the sum of $620,000.00, subject to additions and deductions as provided in the specifications, for the following services:

"The contractor shall furnish all labor, material, equipment and services, and perform and complete all work required for the Modernization of 80 Low Rent Housing Units . . . as defined by the name of Ozane Courts located in Texarkana, Arkansas in strict accordance with the Specifications for modernization . . . and, the Drawings referred to herein . . . "

Essentially, the work to be performed by the contractor consisted of remodeling the interior of the housing units with a small amount of sidewalk work, refurbishing some porches, installing some parking blocks in the parking area, and constructing a few planters. The major outside work consisted of the construction of a day care center, after the contractor had demolished two existing apartments down to the floor level in order to make way for the day care center, which was regarded by the parties as virtually a new construction. Testimony offered by the contractor specified that 90 to 95% of the total construction work to be performed by him involved the remodeling of the interior of the housing units.

Under the terms of the original contract, the owner was to repair, what was assumed to be minor in nature, leaky water lines, broken windows, deteriorated floors and doors under its own auspices.

On March 12, 1973, the contractor called a pre-construction conference with all of his subcontractors and although the contract designated March 5, 1974, as the completion date, the contractor and the subcontractors projected November 21, 1973, as the completion date, allowing time for slippage and weather problems. Crews were set up for sheet rock, electrical, carpentry and plumbing work. The only roofing work to be performed by the contractor was a roof in connection with the construction of the day care center. Construction commenced on March 21, 1973, in accordance with the terms of the contract, which contains standard government contract provisions granting the owner the right to make changes in the job specifications within the general scope of the contract and as necessitated by changed conditions.[1]

---

[1]Section 8 of the contract relating to changes in the work provides, in part, as follows:

"a. The LHA [Local Housing Authority] may make changes in the work of the Contractor by making alterations therein, or by making additions thereto, or by omitting work therefrom, without invalidating the Contract, and without relieving or releasing the Contractor from any guaranty given by him pursuant to the Contract provisions, and without affecting the validity of the bond(s) and without relieving or releasing the surety or sureties of said bond(s). All such work shall be executed under the conditions of the Contract.

On April 20, 1973, the contractor discovered leaks in the roofs of the units under repair and between April 20, 1973, and May 4, 1973, there were consultations between the contractor and the owner regarding the amount of work and cost involved in the repairs required to stop the leaks. On May 3, 1973, the contractor received a change order from the owner, in accordance with the terms of the contract, calling upon the contractor to make the necessary roofing repairs which the contractor rejected because there was no provision for extension of time for the completion of the contract in view of the fact the contractor's subcontractors indicated that a minimum of six weeks, with perfect weather, would be required for the completion of the roofing work; that there was no allowance for extra labor or materials and that the proposed work, under the change order, would create a financial hardship on the contractor which he could not ab-

---

"b. Except in an emergency endangering life or property, no change shall be made by the Contractor unless he has received a prior written order from the LHA, countersigned by the Architect, and approved on its face by HUD, authorizing the change. Any change in the work shall be ordered and the adjustment of the contract price or time shall be determined by one of the following methods:

*Method-1 — Adjustment before Performance*

By issuance of a Change Order providing for an agreed lump-sum adjustment and supported as provided in sub-paragraph 8f.

*Method-2 — Adjustment after Performance*

By prior issuance of a Proceed Order, authorizing the Contractor to proceed with the change by the most economical method. If net extra cost is anticipated such order shall state the maximum sum, including all items of overhead and profit. If such sum is exhausted prior to the completion of the change, the Contractor shall not proceed with the work without an additional and separate Proceed Order. If a credit is anticipated the Proceed Order shall state the amount of anticipated credit."

Section 9, paragraph d of the contract provides, in relevant part, as follows:

"If the Contractor claims that any instructions by drawings or otherwise involve extra cost or extension of time, he shall, within ten days after receipt of such instructions, and in any event before proceeding to execute the work, submit his protest in writing to the LHA."

sorb and, consequently, he could not waive his rights for damages.[2]

On or about June 4, 1973, the owner's architect advised the contractor that until a decision had been reached regarding the roofing work, the contractor would have to cease work under the contract in order to avoid damage to the interior that was being performed by his various crews. Consequently, the contractor was unable to proceed with the sheet rock, trim, painting, cabinet and floor work in accordance with the pre-construction schedule agreed upon by contractor and his subcontractors. Moreover, the contractor was compelled to release approximately one-half of his work force which he never recouped.

As a further consequence of the delay caused by the roofing defects and other change orders received from the owner either adding or deleting certain items of repair and the failure of the owner to make timely decisions involving changes and corrections in the defective plans and specifications, the contractor alleges that he experienced a sixty-eight day delay resulting in the completion of the job on February 28, 1974, instead of the projected date of November 21, 1973.

The contractor testified that the total dollar amount of net changes after additions and deductions to the contract, amounted to $49,000.00, while the percentage of the change overall was approximately 37%.

## HOLDING OF THE TRIAL COURT

The trial court, in rendering a judgment in behalf of the appellee-plaintiff, made the following findings:

"That Defendant, Housing Authority of the City of Texarkana, Arkansas, breached its contract with the plaintiff in two particulars: First, in requiring a

---

[2]Numerous change orders were issued by the owner, some of which granted extensions and specified additional sums to be allotted to appellee for the work. However, we deem it unnecessary to document these change orders for a resolution of the issue before us. Moreover, for purposes of this appeal, the delay which the contractor complains of, may be considered as attributable entirely to the change orders.

duplicate bond prior to releasing the retainage, said requirement being outside the terms of the contract to Plaintiff's damage in the amount of Seven Hundred Fifty-Two Dollars ($752.00), for which Plaintiff is entitled to judgment; and, secondly, Defendant breached the contract made the subject to this cause by breach of warranty of the plans and specifications submitted to the contractor resulting in cardinal changes to the contract consisting of changes in the roof, floors, and plumbing which were not within the scope of the original contract and which forced the contractor to more costly operations and forced the contractor into an undertaking different from the original contract. Defendant further breached the contract in failing to make timely decisions concerning changes and corrections to the defective plans and specifications. The breaches of the Defendant caused a delay in the completion of the original contract of sixty-eight (68) days at a cost for extended job and pro rata share of home office overhead of $233.21 per day for a total of Fifteen Thousand, Eight Hundred Fifty-Eight and 28/100 Dollars ($15,858.28), reduced by a release executed by the Plaintiff to Twelve Thousand One Hundred Eighty-Six and 12/100 Dollars ($12,186.12), for which plaintiff is entitled to judgment.''

## CONTENTIONS OF APPELLANT FOR REVERSAL

1. The court erred in denying defendant's jury demand filed on the 19th day of May, 1977.

2. The court erred in denying defendant's motion for a directed verdict at the close of plaintiff's case.

3. The court erred in allowing plaintiff to introduce testimony and exhibits to vary the terms of the contract made the subject of this cause in violation of the parol evidence rule.

4. The court erred in finding defendant breached the contract made the subject of this cause by breach of warranty of the plans and specifications submitted to

the contractor resulting in cardinal changes to the contract.

5. The court erred in allowing damages to plaintiff for delay in completion of the contract made the subject of this cause, even though plaintiff completed the contract within the specified time.

## THE DECISION

Appellant's points for reversal of the trial court's holding shall be considered seriatim.

## DEMAND FOR JURY TRIAL

Article 2, Section 7, of the Arkansas Constitution, in material part, is as follows:

"The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy; *but a jury trial may be waived by the parties in all cases in the manner prescribed by law;* . . . "[3] (Emphasis added)

The record before us reflects that this action was instituted February, 1975. On March 24, 1977, pursuant to agreement by counsel of record, the matter was scheduled for non-jury trial on March 24, 1977, during pre-trial proceedings and the case was set for trial before the court on June 13, 1977. On May 19, 1977, appellant-defendant filed its motion demanding a jury trial and appellee-plaintiff filed its objections to the jury trial demand on May 31, 1977. On the date of the scheduled trial, appellant presented its motion for the court's consideration and the trial court denied appel-

---

[3]Paragraph IV of the rules of the Miller County Circuit Court, on file in the offices of the Circuit Clerk of Miller County and the Clerk of the Arkansas Supreme Court, which was adopted pursuant to Ark. Stat. Ann. 22-309 (Repl. 1962), provides as follows:

"All attorneys who desire jury trials for pending litigation shall notify the Court and opposing counsel at least fifteen (15) days prior to pre-trial dates. After service is ripe and/or the issues have been joined the failure to request a jury trial either as plaintiff or defendant will constitute a waiver of jury trial."

lant's request stating that appellant had waived its right to a jury trial during the pre-trial proceeding and that the matter would be heard as scheduled.

Under the circumstances involved, we are unable to say the trial court abused its discretion in denying appellant's belated request for a jury trial after having waived it during the pre-trial proceeding.

## MOTION FOR A DIRECTED VERDICT

It is well recognized that upon a defendant's motion for a directed verdict, at the close of plaintiff's case, the evidence, including all reasonable inferences thereto, must be viewed in the light most favorable to the plaintiff and will be granted only when there is no evidence tending to establish an issue in plaintiff's favor. Accordingly, in considering the totality of the evidence adduced by the plaintiff in support of its case, we are persuaded that the trial court did not err in not granting a directed verdict. *Southern Pipe Coating, Inc.* v. *Spear & Wood Mfg. Co.*, 235 Ark. 1021, 363 S.W. 2d 912; *Barrentine* v. *The Henry Wrape Co.*, 179 S.W. 328.

Moreover, the record does not clearly show that the appellant really made a motion for a directed verdict at the close of appellee-plaintiff's case. It seems plain that appellant-defendant indicated to the trial court a desire to make a motion for a directed verdict, but, instead, sought and received leave of the court to submit a written motion supported by a brief which, according to the record before us, was never filed.

## PAROL EVIDENCE RULE

Appellant argues that the trial court committed reversible error in permitting the appellee to offer evidence concerning appellee's damages purportedly realized as a result of the delays and indecisions on the part of appellant relative to changes in the project which prevented appellee from completing the job on the projected completion date, namely, November 21, 1973; and further objected to the "sequencing of the job at issue." Appellant's objection was grounded on

the theory that the parties had entered into a written contract where the terms were written in clear and unambiguous language; and that the evidence offered by appellee varied the terms of the contract in violation of the parol evidence rule. In support of its posture, appellant cited *Hoffman* v. *Late,* 222 Ark. 395, 260 S.W. 2d 446, where we emphasized that the parol evidence rule declares that certain kinds of facts are legally ineffective in the substantive law; and that this results in forbidding the fact to be established at all. We further stressed that the practical justification for the rule lies in the stability that it gives to written agreements, otherwise either party might avoid his obligation by testifying that a contemporaneous oral agreement released him from the duties that he had assumed in the written document.

We perceive that appellant's conception of appellee's reason for offering the evidence is misplaced. We do not view the appellee's reason for offering the evidence as for the purpose of varying the terms of the contract, but, on the contrary, the evidence was submitted for the purpose of establishing a fact that cardinal changes were made in the contract that were not contemplated in paragraph 8 of the general conditions of the contract. It is the contention of the appellee that the appellant breached its contract by issuing various stop orders and making various changes in the work outside of the terms and scope of the original contract which were caused as a direct consequence of defective plans and specifications adopted by the owner and submitted for bids.

We are persuaded that the trial court was eminently correct in admitting the evidence offered since this evidence was relevant to the interpretation of the original contract in order to determine if appellee was performing changes that were substantial or, on the other hand, changes that were the type contemplated under the terms of the original contract. Indeed, it was appropriate for the trial court to view the entire undertaking.

## BREACH OF WARRANTY AND DAMAGES

Appellant argues persistently that the trial court erred in finding that the changes to the contract constituted a breach

of the original contract; and further erred in allowing damages to appellee. Appellant reasons that appellee inspected the premises prior to the bidding and further inspected the premises several times before the work commenced; and that Jack Miller, the inspector for the project, testified that it is not uncommon for changes to be made in a construction job. Moreover, appellant argues, Jack Miller testified, the contractor could readily see that the roofs of the units that he was to repair were vulnerable to leaks; that the doors had been vandalized prior to the bidding and that the units were in a dilapidated condition generally. Further, appellant insists that the contract permits the owner to make changes in the work of the contractor without invalidating the contract.

On the other hand, the contractor contends that a delay, as in the instant case, caused by defective plans and specifications give rise to damages in favor of the contractor.

We are persuaded that where, as here, the owner supplies plans and specifications to a contractor detailing the work to be performed, the owner implicitly warrants the adequacy and suitability of the plans and specifications for the purpose for which they are tendered. We are further persuaded that this implied warranty is not nullified by any stipulation requiring the contractor to make an on-site inspection where the repairs are to be made and a requirement that the contractor examine and check the plans and specifications. However, a competent and experienced contractor cannot rely upon submitted specifications and plans where he is fully aware, or should have been aware, that the plans and specifications cannot produce the proposed results. Therefore, where delays result, as here, because of faulty specifications and plans, the owner will have to respond in damages for the resulting additional expenses realized by the contractor. Moreover, the owner's breach of its implied warranty may not be cured by simply extending the time of the performance of a contractor's assignment. *See: J. D. Hedin Construction Co.* v. *United States,* 347 F. 2d 235 (1965); *Litchfield Mfg. Corp.* v. *United States,* 338 F. 2d 94 (1964); *Centex Const. Co., Inc.* v. *Worth James, d/b/a Worth James Const. Co., et al,* 374 F. 2d 921 (1967).

It is clear from the evidence in this record before us that the delays occasioned by the owner's changes and indecisions prevented an early completion date of the project. Moreover, Paul C. Kinsey, Sr., representative of the United States Department of Housing and Urban Development, who met in conference with the parties in an effort to resolve the complaints of the contractor, admitted, in his Memorandum Report, that the contractor's claim that the owner was delaying the job progress by failing to make timely decisions with reference to changes was true. Further, Mr. Kinsey observed in his report that the two changes that seriously affected the progress of the contractor were the roofs and plumbing work.

It must be remembered that appellant-owner had assumed the responsibility to make the necessary repairs to the roofs and plumbing which were not within the scope of the original contract, but as a consequence of appellant-owner's failure to carry out this responsibility, the contractor was required to accept this undertaking. These cardinal changes resulted in additional expenses to the appellee and a delay in the completion of the original contract of 68 days at a rate of $233.21 per day, aggregating a total of $15,858.28, minus a release executed by the contractor of all sums in excess of $12,186.12.

The appellant-owner's basic and fundamental defense to the contractor's action for damages is essentially that the contractor completed the project within the allotted time under the contract, namely, 350 days after receipt of notice to proceed with construction. However, we are not impressed with appellant's argument. Indeed, an owner may not prevent a contractor's early completion of his assignment with impunity.

We believe that the following observations made by the court in *Metropolitan Paving Co.* v. *United States*, 325 F. 2d 241 (1963), involving an action by the contractor for damages, under a government construction contract, is an appropriate response to appellant-owner's assertion:

"In order to recover, plaintiff must surmount three hurdles. First, it must prove that defendant's employees

did unnecessarily cause delay. It must then establish that such delays constituted a breach of contract. Finally, it must establish that it suffered damages due to the breach.

. . .

"... While it is true that there is not an 'obligation' or 'duty' of defendant to aid a contractor to complete prior to completion date, from this it does not follow that defendant may hinder and prevent a contractor's early completion without incurring liability. It would seem to make little difference whether or not the parties contemplated an early completion. Where defendant is guilty of 'deliberate harassment and dilatory tactics' and a contractor suffers damages as a result of such action, we think that defendant is liable."

Although appellant-owner's notice of appeal is an appeal from the holding of the trial court which found that appellant breached its contract with appellee by also requiring a duplicate bond prior to releasing the retainage, appellant makes no argument in his brief relative to this finding; consequently, we take the position that appellant has abandoned this finding as a point for reversal.

Accordingly, we find that the trial court's holding is supported by substantial evidence and the trial court's judgment is affirmed.

Affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HOLT, JJ.