# WALKER FORD SALES and FORD MOTOR COMPANY *v.* William GAITHER et ux

78-150                  578 S.W. 2d 23

Opinion delivered March 12, 1979
(In Banc)

*Griffin Smith* and *W. R. Nixon, Jr.,* for appellants.

*John Belew,* of: *Harkey, Walmsley & Belew,* for appellees.

FRANK HOLT, Justice. The trial court, sitting as a jury, awarded appellees damages of $1,000 against appellant Walker Ford Sales and $1,000 against appellant Ford Motor Company for breach of warranty. Appellants first assert for reversal that the court erred in ruling that appellants breached an implied warranty of merchantability because such warranty had been conspicuously excluded by the express warranty and because appellees had examined the car and were aware of its alleged defect at the time of the sale.

Appellees bought a 1974 Ford Thunderbird on July 13, 1974, from appellant Walker Ford Sales, an authorized dealer. The car was a demonstrator and had been driven 4,-250 miles. Appellees test drove the car and agreed to pay $6,-300 for it. They paid $1,400 down and signed a $4,900 note plus interest for the balance. After making payments, the appellees refused to pay the $2,000 balance. On May 17, 1976, appellant Walker Ford filed a replevin action. Appellees counterclaimed against Walker Ford and cross-complained against appellant Ford Motor Company, alleging that the car was defective in that it had a persistent and intolerable vibration when driven at highway speeds; that the defective condition had existed since the appellees purchased it; that notice of the defect was given to appellants) that at the time of purchase, appellants jointly gave *an extension* of a new car warranty on the automobile to the appellee purchasers to the effect that the selling dealer would replace or repair, free of charge, any part, except tires, found to be defective in factory materials or workmanship under normal use up to a maximum of 12 months or 12,000 miles *from the date of sale* of the demonstrator; and that appellants had not complied with the warranty by failing and refusing to correct the vibration by replacing parts or repairing the automobile. The appellants denied that the car was defective and that the warranty had been breached by them. The trial court found that Ford Motor Company had breached the express and implied warranties with respect to the merchantability of the car and Walker Ford Sales and Ford Motor Company were unable to diagnose the specific defective parts which caused the vibration. As indicated, appellants cnntend this was error.

An express warranty may exclude an implied warranty of merchantability if the exclusion mentions the word "merchantability" and, if written, is conspicuous. Ark. Stat. Ann. § 85-2-316 (2) (Add. 1961). See *Mack Trucks* v. *Jet Asphalt*, 246 Ark. 101, 437 S.W. 2d 459 (1969). Ark. Stat. Ann. § 85-1-201 (10) (Supp. 1977) defines "conspicuous" as being "so written that a reasonable person against whom it is to operate ought to have noticed it" and states that "language in the body of a form is 'conspicuous' if it is in larger or other contrasting type." Here the express warranty given by

appellants stated that "to the extent allowed by law, THIS WARRANTY IS IN PLACE OF all other warranties, express or implied, including ANY IMPLIED WARRANTY OF MERCHANTABILITY or fitness. Under this warranty, repair or replacement of parts is the only remedy." This language clearly complies with the requirements for exclusion of implied warranty of merchantability. Further, it appears that the appellees never pleaded breach of implied warranty. The court was incorrect in ruling that appellant Ford Motor Company breached the implied warranty since it was effectively excluded. Appellees themselves recognize that the express warranty conspicuously excluded "any other warranties."

As to the express warranty, the appellants argue that the evidence is insufficient to support a judgment for a breach of it. They insist that the appellees failed to prove the demonstrator car had defective factory materials and workmanship. Appellants correctly state that we have held that a party, seeking to establish a breach of warranty against a manufacturer, must show that the automobile was in a defective condition at the time it left the control of the manufacturer. *Ford Motor Co. v. Gornatti,* 253 Ark. 237, 486 S.W. 2d 10 (1972). There a defective carburetor was the cause of a mishap 1 1/2 years after the car had left the control of the manufacturer, the date of sale and warranty. No evidence was adduced that the malfunctioning carburetor was factory related or existed at the time of the car sale with the warranty. Consequently, we held there was insufficient evidence from which the jury could properly infer that a defective carburetor existed 1 1/2 years before or when the car left the control of the manufacturer and sale by the retailer.

However, in *Ford Motor Co. v. Reid,* 250 Ark. 176, 465 S.W. 2d 80 (1971), a case we feel is more similar to the one at bar, we held that the court was correct in giving a jury instruction which required the appellees, who had sued the appellant manufacturer for breach of express warranty, to prove only that the car had been defective at the time the automobile was delivered to the appellee purchasers. There appellant argued the instruction was error because it did not limit its liability to defects existing prior to the time the car

left Ford's control or for which it had manufacturing responsibility. The warranty expressly provided that it ran from the date of delivery to the purchaser, or first use, whichever was first. In *Gornatti*, the warranty also expressly ran from the date of delivery. Here, as indicated, it ran from the date of sale to the first retail purchaser. To the extent that there is an apparent conflict in *Gornatti* and *Reid*, we hold that *Reid* was correct in assigning the burden of proof to the purchaser for showing that the defect existed at the time the car was first delivered to the retail purchaser. Although we think *Gornatti's* decision was ultimately correct, the language stating the burden was upon the purchaser to establish a defect at the time the car left the manufacturer's control was erroneous. Under the express warranties in *Reid* and *Gornatti* and here, the purchaser had the burden to show a defect at the date of sale or delivery, not at the time it left the manufacturer's factory or control. The evidence in *Gornatti* was insufficient even as to that point in time.

Here the alleged vibration existed and persisted constantly from the very date of the sale and appellant's joint extension of the new car warranty. It is not contended that the appellee purchasers failed to properly maintain, operate and care for the vehicle. It appears there was normal use of it. True, the appellees were never able to tell appellants specifically what defective condition caused the vibration. However, they promptly complained and appellants' mechanics repeatedly worked on the automobile to correct the vibration, described as a "rocking motion," when driven at approximately 55 m.p.h. If you were sitting in the car with your legs crossed, "[y]ou just sit there and rock your legs like that, back and forth." "[Y]ou can feel it through the seats, the whole thing shakes." Appellants' mechanics and others, who worked on the automobile for appellees, were unable to locate a specific defective part. Appellees' witnesses testified that the car retained the vibration even when mounted on blocks and run at highway speeds without the tires. During the three years appellees had the car, efforts by them to correct the vibration consisted of placing seven new sets of tires on the car (one being "ramp tested"), aligning the front end, switching wheels, replacing the drive shaft, turning the rear brake drums, and changing the rims three times.

A contract, as here, should be construed "in accordance with what the ordinary purchaser would understand from its language." *Vernon* v. *Lake Motors,* 488 P. 2d 302 (Utah 1971). Here, as indicated, on the date of sale and delivery of the car, the manufacturer and the dealer jointly agreed, by the extension of a new car warranty, to correct any defects in material or workmanship. The fact that the car had 4,250 miles on it was recognized by the warranty. In the circumstances, the evidence is amply substantial to support the finding that the appellants breached the express warranty.

Appellants assert that, should we find that the express warranty was breached, there is insufficient evidence to support the award of $2,000 damages. We agree. The measure of damages for a breach of warranty is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . . . " Ark. Stat. Ann. § 85-2-714 (2) (Add. 1961). See also *Marion Power Shovel Co.* v. *Huntsman,* 246 Ark. 152, 437 S.W. 2d 784 (1969). Here appellees paid $6,300 for the automobile. They testified that it had "no value" at the time of the purchase. However, admittedly, they have driven the car 60,000 miles in the 3 years since their purchase. The car does not vibrate until it reaches speeds in excess of 50 m.p.h. Therefore, we cannot say that the car was of no value to the appellees. Even so, they argue that the testimony given by appellant Noil Walker, the retailer, indicating he was willing to give them $2,000 credit, was relied upon by the trial court in determining the correct amount of damages. The record shows, however, that Mr. Walker testified that at one time he offered to purchsse the automobile for its market value and deduct $2,000 still due him from appellees from that market value. There was no testimony as to what the market value on that date was. We hold there is no evidence to support the finding that the damages were $2,000. Upon remand, the actual market value of the car when sold in its defective condition can be determined and the appropriate figure for damages established. § 85-2-714 (2), *supra,* and *Marion Power Shovel Co.* v. *Huntsman, supra.*

Appellants did not seek to limit appellees' remedy to repair or replace defective parts. Obviously, they recognize

that the situation is controlled by *Kohlenberger* v. *Tyson's Foods,* 256 Ark. 584, 510 S.W. 2d 555 (1974), where we stated:

It would seem that the evidence introduced on this trial conclusively showed that the attempted modification and limitation failed of its essential purpose, as a matter of law. It has been held, properly, we think, that when there is substantial evidence, as there is here, tending to show that a particular piece of machinery obviously cannot be repaired or its parts replaced so that the same is made free from defects, a jury verdict, which implicitly concludes that a limitation of the remedy to repair and replacement of nonconforming parts deprived the purchaser of the substantial value of the bargain, should be sustained . . . .

For the error indicated, the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

BYRD, J., would affirm.