Jerry BULLINGTON, *d/b/a*
Bullington Builders, Inc. *v.* Helen PALANGIO

00-878                                              45 S.W.3d 834

Supreme Court of Arkansas
Opinion delivered June 21, 2001

*The Blagg Law Firm*, by: *Ralph J. Blagg* and *Brad A. Cazort*, for appellant.

*Morgan & Tester, P.A.*, by: *Kent Tester*, for appellee.

RAY THORNTON, Justice. Appellant, Jerry Bullington, doing business as Bullington Builders, Inc., appeals the January 27, 2000, judgment of the Van Buren County Circuit Court, finding him individually liable to appellee, Helen Palangio, and awarding damages to appellee in the amount of $19,000.00. Appellant raises two points for reversal: (1) the trial court erred in allowing the jury to impose personal liability upon appellant, and (2) the trial court erred in submitting the issue of waiver of implied warranties to the jury. We find no reversible error and affirm.

On July 9, 1994, the parties entered into a contract for the construction of appellee's new residence in Damascus. The contract was signed on July 11, 1994, and is entitled "Bullington Builders, Inc." at the top of the contract, but is entitled "Jerry Bullington" at the upper right-hand corner. The language of the contract provides that the contract is between "Jerry Bullington, d/b/a Bullington Builders, Inc." and "Helen Palangio." The contract was executed by Jerry Bullington, d/b/a Bullington Builders, Inc., and does not indicate any official capacity as a corporate officer.

Bullington Builders, Inc. ("Corporation"), was incorporated on December 29, 1993. The Corporation's only stockholders were appellant, who managed the business, and appellant's wife. The Corporation failed to pay its franchise taxes, and its charter was revoked approximately one and one-half months before the completion of construction on appellee's home. The Corporation's charter was not reinstated.

The contract provides for a one-year express warranty for workmanship and materials beyond normal wear and tear. The contract further states that the "[c]ontractor will expedite work in a timely manner without sacrificing quality. *Quality will not be sacrificed under any circumstances.*" The contract is silent with regard to implied warranties of habitability and proper construction.

Following completion of the residence, appellant sought to remedy appellee's complaints about the construction, but she was not satisfied. After more than one year had passed, appellee contracted with another builder to remedy the defects she alleged.

On October 15, 1997, following the completion of these repairs, appellee brought this action against Jerry Bullington, d/b/a Bullington Builders, Inc., alleging negligence, breach of implied warranty, and breach of contract. Specifically, appellee alleged various acts of negligent construction, including negligent construction of steps from the garage into the house, negligent construction of the concrete driveway, negligent construction of the attic, negligent construction of support piers, and various instances of negligence pertaining to cosmetic features of the house.

On December 10, 1998, the complaint was amended to include Bullington personally as a defendant, asserting that the corporate entity did not shield him from personal liability for negligence, breach of implied warranties, and breach of contract, and asking the court to hold him and the Corporation jointly and severally liable for appellee's damages. The complaint was further amended to allege that appellant failed to follow the plan provided by appellee as set out in the contract between the parties, amounting to breach of contract.

At the conclusion of the trial, the jury returned a general verdict, finding appellant individually liable to appellee and awarding damages of $19,000.00 to her. The jury found no liability with regard to the Corporation. The trial court entered judgment in accordance with the jury verdict, and appellant brings this appeal.

*1. Personal Liability*

We first consider whether it was error to hold appellant personally liable for performance of the residential construction contract. We note that this case presents three possible rationales for imposing personal liability upon appellant as an individual.

The first rationale is that even if the contract was originally executed as a binding agreement to be performed by the Corporation, appellant, as owner and manager of the Corporation, became personally liable as an individual who continued to fully perform the terms and conditions of the construction contract after the corporate charter was revoked.

The second rationale is that the construction contract was entered into by Jerry Bullington, d/b/a Bullington Builders, Inc., rather than by the Corporation, and that the construction contract was not executed in the corporate name by its president and attested by its secretary.

The third rationale for imposing personal liability is appellee's contention that the Corporation was so managed and controlled by appellant as to constitute a sole proprietorship; that the Corporation was merely an alter ego and a tool; and that the corporate veil should be pierced in order to impose personal liability upon appellant, who was acting for and on behalf of the Corporation.

■ We first address the issue raised by the first rationale: the effect of revocation of the corporate charter before the completion of construction. Several statutory provisions are applicable in analyzing this issue. Ark. Code Ann. § 26-54-104(a) (Repl. 1997) provides, in relevant part: "(a) Every corporation shall file an annual franchise tax report and pay an annual franchise tax, unless exempted under § 26-54-105...." *Id.* Additionally, Ark. Code Ann. § 26-54-111(a) (Repl. 1997) provides:

> (a) On or before January 1 of each year, the Secretary of State shall issue a proclamation proclaiming as forfeited the corporate charters or authorities, as the case may be, of all corporations, both domestic and foreign which, according to his records, are delinquent in the payment of the annual franchise tax for any prior year.

*Id.* Finally, Ark. Code Ann. § 4-27-1420 (Repl. 1996) provides:

> The Secretary of State may commence a proceeding under § 4-27-1421 to administratively dissolve a corporation if:
>
> 1. The corporation does not pay within sixty (60) days after they are due any franchise taxes or penalties imposed by this chapter or other law.

* * *

*Id.* Reading these statutory provisions together, it is clear that our statutory law imposes an affirmative duty on the corporation to file franchise tax forms and pay the corresponding fees in order to maintain its corporate status.

█ In addition to our statutory law, we have well-established case law regarding the issue of whether personal liability attaches for liabilities that arise if a corporate charter is not perfected or is revoked. For example, in *Gazette Publ'g Co. v. Brady*, 204 Ark. 396, 162 S.W.2d 494 (1942), we stated that in order to exempt any association of persons from personal liability for the debts of a proposed corporation, they must comply fully with the act under which the corporation is created and that partial compliance with the act is not sufficient. *Id.*

█ In *Schmidt v. McIlroy Bank & Trust*, 306 Ark. 28, 811 S.W.2d 281 (1991), we expanded on the proposition we set forth in *Gazette, supra*, and stated that the reasoning behind cases holding officers and stockholders individually liable for obligations that arise during the operation of a corporation when the corporate charter has been revoked for nonpayment of franchise taxes is that they ought not be allowed to avoid personal liability because of their nonfeasance. *Id.* (citing *Whitaker v. Mitchell Mfg. Co.*, 219 Ark. 779, 244 S.W.2d 965 (1952); *Gazette, supra*).

█ In addition, in *H.T. Larzelere v. Reed*, 35 Ark. App. 174, 816 S.W.2d 614 (1991), the Arkansas Court of Appeals held that "[o]fficers and directors of a corporation who actively participate in its operation during the time when the corporate charter is revoked for failure to pay corporate franchise taxes are individually liable for debts incurred during the period of revocation." *Id.* (citing *Mullenax v. Edward Sheet Metal Works, Inc.*, 279 Ark. 247, 650 S.W.2d 582 (1983); *Moore v. Rommel*, 233 Ark. 989, 350 S.W.2d 190 (1961)).

█ In the instant case, it is undisputed that the corporate charter of Bullington Builders, Inc., was revoked for failure to pay franchise taxes approximately one and one-half months prior to the completion of construction, and the charter was not reinstated. After the corporate charter was revoked, appellant individually assumed the performance of the contract. Based upon our case law, we hold that appellant was personally liable for any liabilities that resulted from faulty or incomplete performance of the contract, including those arising as breaches of express or implied warranties. Because the revocation of corporate status imposes personal liability

upon appellant in this case, we need not address the issues presented by the second and third rationales upon which personal liability might be established.

## II. Implied Warranties

We next consider whether it was error for the trial court to submit the issue of waiver of implied warranties to the jury. Appellant contends that the trial court erred by not finding as a matter of law that the contract between the parties constituted a waiver of implied warranties by the appellee.

As authority for his argument, appellant relies on *Carter v. Quick*, 263 Ark. 202, 563 S.W.2d 461 (1978), where we held that where a contract contains an express warranty on the subject of an asserted implied warranty, the former is exclusive and there is no implied warranty on that subject. *Id.* However, the ruling in *Carter, supra*, was that an implied warranty for materials and workmanship was replaced by a specific contractual warranty as to materials and workmanship. The expressed contractual warranty in *Carter, supra*, was that the builder promised that "he would build the house with the same quality and be as good as his own," and stated, "If you want to look at my house look it over. I'll build you one just like it with the same material and workmanship as my house." *Id.* At trial, Carter moved for a directed verdict on the ground that Quick failed to show a breach of the contract because no evidence was presented as to the quality of workmanship of appellant's residence. *Id.* In determining the effect of an express warranty upon an implied warranty in building contracts, we concluded that implied warranties are not applicable when there is an express warranty. *Id.* We further concluded that where a contract contains an express warranty on the subject of an asserted implied warranty, the former is exclusive and there is no implied warranty on that subject. *Id.* (citing *Reed v. Rea-Patterson Milling Co.*, 186 Ark. 595, 54 S.W.2d 695 (1932); *Earle v. Boyer*, 172 Ark. 534, 289 S.W.490 (1927) ; *Elder Grocery Co. v. Applegate*, 151 Ark. 565, 237 S.W. 92 (1922); *C.B. Ensign & Co. v. Coffelt*, 119 Ark. 1, 177 S.W. 735 (1915)). Based upon these principles, we held that because Carter's testimony was the only evidence pertaining to the quality of the workmanship on his own house, the evidence was not sufficient to show a breach of warranty and that Carter's motion for a directed verdict should have been granted. *Id.*

■ Since *Carter, supra,* we have made it clear that implied warranties of habitability, sound workmanship, and proper construction are given by operation of law and are intended to hold a builder-vendor to a standard of fairness. We addressed this issue in *O'Mara v. Dykema,* 328 Ark. 310, 942 S.W.2d 854 (1997), where we stated:

> In *Wawak v. Stewart,* 247 Ark. 1093, 449 S.W.2d 922 (1970), we adopted the view that by operation of law, a builder-vendor gives implied warranties of habitability, sound workmanship, and proper construction. The implied warranty does not rest upon an agreement, but arises by operation of law and is intended to hold the builder-vendor to a standard of fairness. *Wingfield v. Page,* 278 Ark. 276, 644 S.W.2d 940 (1983). However, implied warranties may be excluded when the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is excluded. *See Carter v. Quick,* 263 Ark. 202, 563 S.W.2d 461 (1978); 77A CJS *Sales* § 266 (1994).

*O'Mara, supra.*

■ In the present case, there is an express warranty that covers workmanship and materials, but there is no express exclusion of implied warranties of habitability and proper construction to hold a builder to a standard of fairness. Under the principle set forth in *Carter, supra,* the fact that the contract contains an express warranty that deals specifically with workmanship supports a conclusion that the implied warranty of workmanship has been waived by the express contractual warranty of workmanship. However, our decision in *Carter, supra,* did not specifically address the effect of the waiver of the warranty of materials and workmanship upon the more fundamental implied warranties of habitability and proper construction, and we now hold that the principle set forth in *Carter, supra,* was limited to the effect of an express warranty upon an implied warranty on the same subject. With regard to implied warranties of habitability and proper construction, the contract in the present case does not disclaim such implied warranties and does not use any language to suggest that the construction is being accepted "as is" or "with faults" so as to waive such implied warranties. In addition, appellant testified that he did not explain to appellee that the language of the express warranty covering workmanship and materials for one year was intended to waive implied warranties for habitability and proper construction.

■ According to *O'Mara, supra,* implied warranties may be excluded when the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is excluded. *Id.* Under this standard, the implied warranties of habitability and proper construction were not waived because they were not included in the language of the express warranty on workmanship. There is no showing that the buyer's attention was called to any proposed exclusion of implied warranties of habitability and proper construction.

■ Moreover, the jury instruction concerning warranties essentially mirrored the language of our holding in *O'Mara, supra.* The jury instructions provided as follows:

> For you to determine that the Plaintiff waived the implied warranty, you must consider that a builder, by operation of law, gives implied warranties of habitability, sound workmanship, and proper construction, and are intended to hold the builder to the standard of fairness.

> These warranties may be excluded when circumstances surrounding transactions are themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that certain implied warranties are excluded. You must determine whether there existed sufficient circumstances surrounding the transaction to call the Plaintiff's, Helen Palangio's, attention to the fact that no implied warranties were made or that certain implied warranties were excluded.

This instruction was not erroneous, and we affirm the trial court's referral of this question of fact to the jury.

■ With respect to the verdict reached by the jury, we have consistently held that it is not the appellate court's province to try issues of fact; the appellate court simply reviews the record for substantial evidence to support the jury's verdict. *E.g., City of Caddo Valley v. George,* 340 Ark. 203, 9 S.W.3d 481 (2000); *Missouri Pac. Transp. Co. v. Jones,* 197 Ark. 79, 122 S.W.2d 613 (1939) (holding that on questions of fact, the finding of the jury is conclusive). Because we defer to the jury as to findings of fact, and because there was substantial evidence to support its findings, we affirm.