# GRAHAM CONSTRUCTION COMPANY, INC. *v.*
## Roscoe T. EARL

04-769                                         208 S.W.3d 106

### Supreme Court of Arkansas
### Opinion delivered May 5, 2005

*Thurman & Bishop,* by: *Greg Thurman,* for appellant.

*Vowell & Atchley, P.A.,* by: *Stevan E. Vowell,* for appellees.

JIM GUNTER, Justice. Appellant, Graham Construction Co., Inc., appeals an order from the Carroll County Circuit Court entering judgment in favor of appellee, Roscoe T. Earl, in a construction case involving express and implied warranties. We affirm the trial court's rulings.

In November 1999, Earl met with Graham's representative, Lonnie Graham (jointly "Graham"), to discuss a construction project involving the installation of a roof with skylights over appellee's indoor pool area. Earl told Graham that he would supply the skylights and stainless steel borders, and Graham told Earl that he would supply additional roofing material and the labor. In October 1999, one month prior to their meeting, Earl consulted with two engineers on how to put on the roofing, and based upon the recommendations of the engineers, he chose a six-millimeter Lexan plastic panel for the skylight. Earl also conducted research on the Lexan product, and drafted his own set of installation procedures based in part upon six bulletins that he gathered from the University of Arkansas. Earl requested that Graham use his installation procedures. Graham represented to Earl that the roof would not leak.

On March 2, 2000, based upon an estimate provided by Graham, Earl entered into a verbal agreement with Graham for the price of $3,481.00 to replace the existing roofing material over Earl's enclosed pool area with new roofing material, including new skylights and frames for the skylights. Earl paid appellant the full of sum of $3,481.00 prior to the commencement of the work.

Graham began work on March 6, 2000, and the construction was completed within a reasonable time. During the work, Graham followed Earl's set of installation procedures. However, Earl discovered that the roof leaked in several places approximately twelve days after the completion of the roof work. Graham sent two men to make repairs to the roof. However, the roof leaked again the next time it rained. Earl called Graham, who sent someone to repair the roof and to caulk around the skylights. Several weeks later, the roof leaked a third time after a heavy rain. Earl documented the leaks and made diagrams of the locations of the leaks to give to Graham's workers. After four to six attempts,

Graham made no further efforts to repair the roof. According to Earl, the leaks did not stop, and the roof was never adequately repaired.

On September 18, 2002, Earl filed a complaint in the Eureka Springs District Court, seeking judgment of $4750.00 against Graham. Graham answered, and the district court awarded Earl a judgment of $3,481.00, plus costs and interest. Graham timely appealed to the Carroll County Circuit Court.

On September 29, 2003, Earl amended his complaint, alleging that Graham contracted to replace a roof over Earl's pool area. Earl alleged that Graham expressly represented to him that the new roof would not leak. Earl further asserted an implied warranty that the new roof would not leak and that the work would be performed in a workmanlike manner. Earl further averred that there was a "complete and total failure of consideration." Thus, he requested the full refund of the $3,481.00 paid to Graham. Additionally, he requested the following incidental and consequential damages: (1) $750.09 for the cost of the skylights; (2) $334.73 for flashing and metal for the skylights; (3) $72.48 for lumber; (4) $125.00 for the replacement of a pool cover that was stained as a result of the leaking roof; (5) $3,000.00 for replacement of a pool liner as a result of stains due to a leaking roof; and (6) $300.00 for Earl's fifty hours of labor in scrubbing the pool deck and cleaning the stains as a result of a leaking roof.

On October 13, 2003, Graham answered, raising the defenses of estoppel and waiver and stating that Earl's cause of action was a direct result of his action or inaction regarding both the design of the skylights in question and the materials provided to be used in accordance with Earl's design.

The parties waived a jury trial, and a bench trial was held before the Carroll County Circuit Court on January 26, 2004, and February 25, 2004. At trial, Earl testified that he would supply the windows above the skylights and the stainless steel borders around them. He testified that Graham did not make any express warranties about the work, but Graham "guaranteed me it [the roof] wouldn't leak." According to Earl's testimony, the roof leaked after the first rain. He repeatedly called Graham's workers to repair the roof, but it continued to leak after each rain.

Graham testified that he told Earl that the roof would not leak. Graham further testified that he never represented to Earl that the roof would not leak as a result of the product that Earl supplied or the procedures that Earl furnished.

Graham put on an expert witness, Darrell Wolf, who has been a builder for over thirty-five years. Wolf testified that the Lexan product was installed improperly "every which way it could be installed improperly." Wolf testified that the skylights were installed horizontally, rather than vertically with the pitch of the roof, which is essential for allowing the water to run out. In reviewing the photographs of the skylights, Wolf testified that he saw gaps in the flashing. He further testified that the skylights were not the proper thickness to withstand Arkansas weather.

The trial court found that Graham gave an express warranty that the roof would not leak. The trial court also found that Earl gave an implied warranty of the adequacy and suitability of the materials, plans, and specifications that he supplied. The trial court stated that Graham was a "competent and experienced contractor" and "should have been aware that the plans and specifications could not produce the proposed results." The trial court further found that evidence was not sufficient to prove that the leaks resulted from the inadequacy of Earl's materials or plans. Based upon these findings, the trial court ruled in favor of Earl and found that he was entitled to judgment against Graham for $3,200.00 plus attorneys' fees and costs. From this order, Graham brings its appeal.

We have said that findings of fact of a trial court sitting as a jury will not be reversed on appeal unless clearly against a preponderance of the evidence. *Sharp County v. Northeast Arkansas Planning & Consulting Co.*, 269 Ark. 336, 602 S.W.2d 627 (1980). Since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the superior position of the trial court. *Id.*

For his first point on appeal, Graham argues that the trial court erred in determining that Graham knew or should have known about the unsuitability of Earl's plans. Specifically, Graham contends that Earl impliedly warranted that his installation plans and specifications were fit for the purpose of constructing a skylight over his indoor pool. Graham maintains that he did not know or should not have known that Earl's installation plans and specifications were unfit.

In response, Earl argues that the trial court correctly ruled that Graham's representative, Lonnie Graham, was a competent and experienced contractor, and that he should have been aware that Earl's installation plans could not have produced the desired results.

Graham relies upon *Housing Authority of the City of Texarkana v. Johnson Construction Co.*, 264 Ark. 523, 573 S.W.2d 316 (1978), for the proposition that when an owner supplies plans and specifications to a contractor, an implied warranty arises that the owner's plans and specifications are adequate and suitable for the particular project. We held that the owner who furnished the plans and specifications was liable to the contractor for damages resulting from faulty plans and specifications. *Id. See also United States v. Spearin*, 248 U.S. 132 (1918) (recognizing that the contractor will not be liable for the defects in the plans and specifications provided by the owner, despite clauses in the contract requiring the contractor to check the plans).

■ However, in *Housing Authority*, we further stated:

> We are persuaded that where, as here, the owner supplies plans and specifications to a contractor detailing the work to be performed, the owner implicitly warrants the adequacy and suitability of the plans and specifications for the purpose for which they are tendered. We are further persuaded that this implied warranty is not nullified by any stipulation requiring the contractor to make an on-site inspection where the repairs are to be made and a requirement that the contractor examine and check the plans and specifications. *However, a competent and experienced contractor cannot rely upon submitted specifications and plans where he is fully aware, or should have been aware, that the plans and specifications cannot produce the proposed results.* Therefore, where delays result, as here, because of faulty specifications and plans, the owner will have to respond in damages for the resulting additional expenses realized by the contractor.

*Housing Authority*, 264 Ark. at 533, 573 S.W.2d at 322 (emphasis added).

■ Thus, in *Housing Authority*, we articulated an exception to the general rule that "a competent and experienced contractor cannot rely upon submitted specifications and plans where he is fully aware, or should have been aware, that the plans and specifications cannot produce the proposed results." *Id.* at 533, 573 S.W.2d at 322. Additionally, a contractor or builder impliedly warrants that the work he undertakes will be done in a good and workmanlike manner and will be reasonably fit for the intended purpose. *Carroll-Boone Water Dist. v. M. & P. Equipment Co.*, 280 Ark. 560, 575, 661 S.W.2d 345, 353 (1983).

■ With this well–established precedent in mind, we turn to the present case. Here, Mr. Graham does not dispute that he is a "competent and experienced contractor." *Housing Authority*, *supra*. He testified that he has been working in the construction business for thirty–nine years, and during that time, he has constructed several hundred roofs. Given this experience, Graham would have known, based upon his competence and experience, that the plans that Earl produced would not achieve the desired result.

Graham's own expert witness, Darrell Wolf, testified that the Lexan product "was installed improperly every which way it could be installed improperly." Wolf testified that the skylights were installed horizontally rather than vertically, and were "not turned with the pitch of the roof." Because these skylights were on the horizontal, Wolf stated that the water "stand[s] there building up and sooner or later it's going to freeze, thaw, and break through[.]" Wolf concluded that "[t]here's nowhere for the water to go except in the man's house." He further testified that the sealing procedures in the manufacturer's manual must be followed or "it's going to fail."

■ The trial court ruled that the skylights were thinner than the recommendation by the manufacturer, that the skylights were installed horizontally rather than vertically, that the skylights were not sealed properly, and that the skylights were not installed according to the manufacturer's recommendations. These rulings are supported by the testimony presented to the trial court by Earl, Graham, and Wolf. Based upon our standard of review, we cannot say that the trial court's rulings were clearly against the preponderance of the evidence under *Sharp County*, *supra*.

For his second point on appeal, Graham argues that the trial court erred in finding that Graham's express warranty included the skylight materials, plans, or specifications provided by Earl. Specifically, Graham contends that he excluded the skylight materials and installation procedure from his express warranty that the roof would not leak. He further maintains that his express warranty must be construed in a manner consistent with Earl's implied warranty.

In response, Earl argues that the trial court did not rule that appellant's warranty included the skylights and installation procedures, and that the trial court correctly applied the exception in *Housing Authority*, *supra*, that Graham, as an experienced contrac-

tor, should have known that Earl's plans and specifications could not have produced the proposed result.

■ The question is whether the trial court was correct in determining that Graham's express warranty negates Earl's implied warranty. As a general rule, where a contract contains an express warranty on the subject of an asserted implied warranty, the former is exclusive, and there is no implied warranty on the subject. *Carter v. Quick*, 263 Ark. 202, 563 S.W.2d 461 (1978). However, we are mindful that this case is an anomaly, as there is no written contract. Here, a verbal contract existed between Earl and Graham, and the trial court found that the "parties did enter into an agreement on or about March 2nd, 2000[.]" The parties do not dispute that fact.

■ Additionally, in *Bullington v. Palangio*, 345 Ark. 320, 45 S.W.3d 834 (2001) (citing *O'Mara v. Dykema*, 328 Ark. 310, 942 S.W.2d 854 (1997)), we have said that by operation of law, a builder-vendor gives implied warranties of habitability, sound workmanship, and proper construction. The implied warranty does not rest upon an agreement, but arises by operation of law and is intended to hold the builder-vendor to a standard of fairness. *Bullington*, 345 Ark. at 328, 45 S.W.2d at 839.

■ Under *Bullington*, Graham is held to his implied warranty of "sound workmanship" and "proper construction." Graham made an express warranty that the roof would not leak, but he also has an implied warranty of sound workmanship and proper construction. These notions comport with our holding in *Housing Authority, supra*, where we recognized that "a competent and experienced contractor cannot rely upon submitted specifications and plans where he is fully aware, or should have been aware, that the plans and specifications cannot produce the proposed result." *Id*. at 533, 573 S.W.2d at 322. *See also Carroll-Boone, supra*.

Here, the trial court stated in its order:

> The court found [after hearing Graham's motion for directed verdict] that there was in fact an express warranty that the roof would not leak, and that said expressed [sic] warranty negates and makes inoperative any implied warranties, including the implied warranty that the job would be done in a workmanlike manner as alleged in plaintiff's complaint. There was a general warranty that the roof would not leak, and the court finds no evidence that the skylights were excluded from the warranty that the roof would not leak. The proof was clear that the roof leaked[.]

■ We cannot say that the trial court erred on this point. We note that in Ark. Code Ann. § 4-2-317 (Repl. 2002), which involves express and implied warranties in the sale of goods, "warranties whether express or implied shall be construed as consistent with each other and as cumulative[.]" *Id.* Although the statute is inapplicable to the present case because it involves the sale of goods, we are examining the service performed by Graham, and the principle should nevertheless apply. Here, Graham's express warranty that the roof would not leak, coupled with his implied warranty of sound workmanship and proper construction under *Bullington, supra,* are consistent with one another and take precedence over Earl's implied warranty of his material, plans, and specifications. For these reasons, we cannot say that the trial court's ruling was clearly against a preponderance of the evidence.

For his third point on appeal, Graham argues that the trial court clearly erred in shifting the burden of proof to Graham, and that in proving a breach of Graham's warranty, Earl bore the burden of proving that the leaky roof was caused by Graham's work and materials.

In support of his argument, Graham cites *Walker Ford Sales v. Gaither,* 265 Ark. 275, 578 S.W.2d 23 (1979), for the proposition that an essential element of prevailing on a breach-of-warranty claim involves the proof of a causal connection between the breach of warranty and the damage to the roof. In *Walker Ford Sales,* we held that there was substantial evidence to support the trial court's findings that the manufacturer and retailer breached their express warranty because of the defective condition of the car from the time of sale. *Id.*

In response, Earl argues that the trial court properly found that Graham failed to meet his burden of proving that the leak was caused by inadequacy of the skylight materials.

We agree with Earl's argument. Here, the trial court found that, after denying Graham's motion for directed verdict, "[t]he burden then shifts to defendant [Graham] to prove that there was no warranty or that the defendant is not responsible under the warranty due to defective materials or specifications supplied by the plaintiff [Earl], or for some other reason."

The trial court further found:

> [T]he evidence is not sufficient to prove that the leaks were coming because of the inadequacy of the material or the manner in

which the material is installed. Specifically, the court is impressed by the fact that the leaks occurred with the first rain and continued thereafter. Therefore, the court finds that the plaintiff has met its [sic] burden of proof that there was a breach of the express warranty that the roof would not leak. The court further finds that the defendant has not met its burden of proof that the leaks were caused by inadequate material, plans, or specifications provided by the plaintiff.

We hold that the trial court was correct in its ruling that Earl met his burden of proof "that there was a breach of the express warranty that the roof would not leak." When evidence was presented that the roof leaked, the burden was placed on Graham. Based upon Earl's testimony, the roof leaked after every rain subsequent to Graham's installation of the new roof and skylights. The trial court was in the superior position to determine the credibility of Earl's testimony. Therefore, we cannot say that the trial court's rulings were clearly against the preponderance of the evidence. *Sharp County, supra.* Accordingly, we affirm.

Affirmed.

IMBER, J., concurs.

ANNABELLE CLINTON IMBER, Justice, concurring. I agree with the majority's disposition of the case, but write to expand on the second and third points on appeal. This appeal concerns the terms of an oral contract created between Graham Construction Company, Inc. and Roscoe Earl. As the majority opinion correctly concludes, the question on appeal is whether the trial court was correct in determining that Graham's express warranty negates Earl's implied warranty. Yet, the majority goes on to state that, in addition to the express warranty that the roof would not leak, Graham also created an implied warranty of sound workmanship and proper construction. *Bullington v. Palangio*, 345 Ark. 320, 45 S.W.3d 834 (2001). Any implied warranty created by Graham is inconsequential to our review on appeal because the critical issue involves the effect of Graham's express warranty on the implied warranty created by Earl in supplying the materials, plans, and specifications. The majority opinion fails to do any analysis on this point.

In *Housing Authority of City of Texarkana v. E.W. Johnson Construction Co.*, 264 Ark. 523, 573 S.W.2d 316 (1978), we stated:

We are persuaded that where, as here, the owner supplies plans and specifications to a contractor detailing the work to be performed,

the *owner* implicitly warrants the adequacy and suitability of the plans and specifications for the purpose for which they are tendered. We are further persuaded that this implied warranty is not nullified by any stipulation requiring the contractor to make an on-site inspection where the repairs are to be made and a requirement that the contractor examine and check the plans and specifications. However, a competent and experienced contractor cannot rely upon submitted specifications and plans where he is fully aware, or should have been aware, that the plans and specifications cannot produce the proposed results. Therefore, where delays result, as here, because of faulty specifications and plans, the owner will have to respond in damages for the resulting additional expenses realized by the contractor. Moreover, the owner's breach of its implied warranty may not be cured by simply extending the time of the performance of a contractor's assignment.

*Id.* at 533, 573 S.W.2d at 322 (emphasis added). Thus, in general, an owner who supplies plans and specifications impliedly warrants their adequacy and suitability. *Id.* Even so, under freedom to contract principles, parties are free to contract otherwise. In this case, when Earl supplied Graham with the materials, plans, and specifications, an implied warranty was created as to the adequacy and suitability of those materials, plans, and specifications. Graham and Earl were, however, free to contract otherwise upon negotiating the service contract. In other words, Graham could have expressly warranted that, regardless of Earl's implied warranty, the roof would not leak. An express warranty on the subject of an asserted implied warranty is exclusive, and thus there is no implied warranty on the subject. *Carter v. Quick*, 263 Ark. 202, 563 S.W.2d 461 (1978).

It was the trial court's responsibility, sitting as the finder of fact, to determine the terms of the warranty. In this case, the evidence regarding the terms of the agreement came largely from the testimony of Graham's representative, Lonnie Graham, and Earl. In sum, Earl testified that Graham "guaranteed me [the roof] wouldn't leak." Graham, on the other hand, asserted he never represented to Earl that the roof would not leak as a result of the product or procedures supplied by Earl. We will not reverse unless the trial court's decision is clearly against the preponderance of the evidence. I cannot say that the trial court erred in concluding that the terms of Graham's express warranty that the roof would not

leak negated Earl's implied warranty that the skylight materials, plans, and specifications were adequate and suitable. *Carter v. Quick, supra.*

Finally, the trial court did not in fact shift the burden of proof to Graham. When Earl, as the plaintiff, alleged and proved the terms of Graham's general warranty that the roof would not leak, which express warranty negated any implied warranties, Earl bore the responsibility of proving only that the roof leaked. The trial court's findings regarding the terms of the agreement were not clearly against the preponderance of the evidence. I would affirm.