GOODELL *v.* BLUFF CITY LUMBER CO.

Opinion delivered January 21, 1893.

57   203
77   439

57   203
189   217

1.  *Contract of sale—Damages for breach.*

    In an action for breach of a contract of sale of a machine, evidence of the loss of profits in the plaintiff's business, resulting from the breach, and of plaintiff's expenses in procuring another machine, is inadmissible; such loss and expenses being too remote and speculative to constitute elements of damages.

2.  *Contradictory instructions—When prejudicial.*

    An erroneous instruction, given at the instance of appellee, will not be cured by a correct instruction upon the same subject, given at the request of appellants, if the jury were left free to follow the erroneous instruction, and it does not appear from their verdict that they did not do so.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

The Bluff City Lumber Co., a corporation doing business at Pine Bluff, brought suit by attachment against Goodell & Waters, of St. Louis, Mo., to recover $1000 damages for defendants' failure to comply with a contract for the sale of a No. 5 planer, and to recover $2500 damages for loss of prospective profits occasioned by such failure.

J. F. Rutherford, plaintiff's vice-president and secretary, testified in substance as follows:

Plaintiff purchased from defendants an endless-bed joiner, which failed to do the work for which it was recommended. Defendants promised to send a man to make the machine satisfactory, and did send Mr. Hooper for that purpose. He worked on the machine several days, but it would not do the work.

" Mr. Hooper came into the office and. said he had failed to make it work satisfactorily, and asked if we could not be induced to buy another machine. He showed me a catalogue, and I finally came to a machine, which was No. 3, which I picked out at $1450. We made the trade for that machine. We were to pay $650 or $700, and he was to take the old machine. He telegraphed the house he had made that offer. They telegraphed. back that they were not making that size machine, but that their No. 5, which was a light machine and less expensive, they could recommend. This machine was lighter and didn't suit us quite as well as the one we first selected, but we made the trade anyway. We were to pay $550 and the old machine, and the trade was made. I signed the order, and Mr. Hooper signed one. Goodell & Waters refused to comply with the contract, and never sent the machine. I could not get another machine only through Goodell & Waters. I made several efforts to get one. We finally, about five months afterward, got another machine. The machine we were to return was worth $700, and the additional $550 which we were to pay, made the cost of the new machine $1250. We had orders for dressed lumber at the time the machine was ordered, and for this reason we needed this machine."

Witness also testified that the machine contracted for could be obtained only from defendants, and that plaintiff subsequently bought a Woods machine to do the work of their mill for $1200 cash, and thereby lost

the value of the old planer, $650, which has ever since remained near the mill, subject to defendants' order.

He was permitted to testify, over defendants' objection, that he had made a trip to St. Louis and Chicago, at an expense of $105, in order to procure a machine; that plaintiff was out the use of the machine for at least five months, for which a claim of $2000 as damages was made; that plaintiff was unable, during that time, to take orders for lumber, for which a claim of $2000 as damages was made. Witness further testified that Hooper showed him a telegram from defendants in which they said that anything Hooper should do toward adjusting the difference between them and plaintiff company would receive their approval.

H. N. Frew testified with reference to the old planer as follows: "The old machine was in the mill when Hooper left, and we used it quite a while. I think we used it until the new machine came. We had to use it. That was the only one we had to put in service."

There was evidence, on behalf of defendants, that Hooper had no authority to make the contract sued upon.

At plaintiffs' instance the court charged the jury as follows: "If the jury believe from the evidence that R. Hooper, on the 11th day of April, 1889, was the lawful agent of defendants, Goodell & Waters, to sell and negotiate with plaintiffs concerning a planer, and that such agent contracted with plaintiffs to sell them a No. 5 planer, as set out and mentioned in the contract in evidence, for the sum of $1250, and that said agent then and there agreed with said plaintiff to take in part payment thereof a planing machine then in possession of plaintiff, allowing the plaintiff for the same the sum of $700, and that said plaintiff then delivered the said machine to the said agent in pursuance of such contract, and relied upon the promise of such agent to ship them the said new machine, and that the said defendant, in violation of

said contract so made with their agent Hooper, failed to comply with their said contract, then the jury, in arriving at plaintiff's damages, may take into consideration the value of the old machine left in the hands of plaintiff, and also the expenses of plaintiff in undertaking to supply a new machine, which defendants failed to ship, and also take into consideration whatever loss the said plaintiffs actually sustained by reason of any violation of such contract, if the jury believe from the evidence that the same was violated."

In the fifth charge, given by the court upon the application of defendants, the jury were told that "if they find for the plaintiff, the measure of damages which it may recover from the defendants is the difference in the price at which the defendants' agent agreed to sell the planer for, and what the planer could heve been purchased at in the market, and the jury will disregard all evidence outside of this inquiry."

The jury gave a verdict of $400 for plaintiff. Defendants have prosecuted an appeal, and insist that the trial court erred in permitting evidence to be introduced as to the amount of damage sustained, and in charging the jury.

*N. T. White*, for appellant.

1. The evidence fails to show that Hooper was the general agent of the appellants, or had authority to bind them by his acts. Nor is there any evidence upon which to base the charge "that if defendants permitted R. Hooper to hold himself out to the plaintiffs as their agent in selling machinery, etc., then defendants will be held liable therefor." 31 Ark. 212.

2. In the absence of express authority, an agent cannot receive in payment anything except money. Benjamin, Sales, (rev. ed.) secs. 1063, 1092, 1099; Pars. Cont. vol. 2, p. 58, note h; Story, Agency, secs. 99, 413,

430 ; 10 Mich. 357, 367 ; 42 Mich. 162 ; 86 Ill. 570 ; 65 Mo. 89 ; 12 Cal. 139 ; 41 Iowa, 682 ; 43 *id.* 404.

3. The measure of damages was the difference between the price at which the agent agreed to sell the planer, and what the planer could have been purchased for in the market. 2 Ark. 397 ; 47 Ark. 519, 527 ; 55 *id.* 401 ; 55 *id.* 376. Evidence of expenses to St. Louis and Chicago, and of prospective profits, clearly inadmissible. 47 Ark. 527 ; 48 *id.* 510.

*Austin & Taylor* for appellees.

1. Hooper was the general agent of appellants, and was authorized to bind them in this transaction. 24 Minn. 298 ; 78 Ala. 372.

2. Even if evidence as to profits lost was erroneously admitted, yet the item of $650 as the value of the old planer left on appellees' hands, and the items of expenses in search of a planer, which are legitimate, exceed the verdict.

3. The first instruction, while abstract in the sense that it is applicable to any similar case, correctly embodied the law on the subject. 88 Ill. 167.

MANSFIELD, J. 1. The court erred in admitting evidence to show the loss of profits in the business of the plaintiff company, resulting from a breach of the alleged contract, and to show the expenses of Rutherford, the company's vice president, in visiting St. Louis and Chicago, for the purpose of obtaining a machine in lieu of the one the defendants refused to deliver. Such losses and expenses were too remote and speculative to constitute elements of the plaintiff's damages. *Kempner* v. *Cohn,* 47 Ark. 527; *Holliday* v. *Cohen,* 34 Ark. 710 ; *St. Louis etc. Railway* v. *Mudford,* 48 Ark. 502, 510 ; *Blass* v. *Lee,* 55 Ark. 331.

> 1. Damages for breach of contract of sale.

2. The error thus committed was in effect repeated by giving to the jury the plaintiff's third instruction;

> 2. When inconsistent instructions prejudicial.

and that part of the charge was not rendered harmless by giving the defendant's fifth request. The latter stated the rule of damages applicable to the case; but the jury were left free to take as their guide the erroneous instruction, and we cannot say from the verdict that they did not do so. *Selden* v. *State*, 55 Ark. 393.

It is argued however that damages, amounting to $650, were recoverable because in buying the "Woods machine," to supply the place of the No. 5 planer ordered from defendants, the plaintiff expended that sum in addition to the amount agreed to be paid in money on the price of the No. 5 machine. But this additional outlay of money could only be treated as a difference between the prices of the two machines, on the assumption that the joiner, which it is claimed the defendants agreed to receive in part payment at the price of $700, was in fact of no value at all; and that assumption is wholly unwarranted by the evidence adduced by the plaintiff. Rutherford in testifying was asked to state its value, and answered by merely saying that Hooper, the company's agent, estimated its value at $700. If such was its value, as it remained the property of the company, the latter sustained no damage by the defendants' failure to perform the agreement; for, as we understand the testimony, the Wood's machine did all the work that was expected of the No. 5. We do not presume that the estimated value of the joiner was its real value. But it is admitted that the plaintiff continued to use the joiner for about five months after the defendants refused to take it; and this shows that, whether it had a market value or not, it was not without some value to the plaintiff. If the sum representing its value at the time the plaintiff was notified that the No. 5 planer would not be shipped, was less than the sum of $650, then the difference between the two will show the actual damage sustained by the plaintiff. But, on the proof made as to

the value of the joiner, we are unable to say that such was probably the measure of damages adopted by the jury.

3.  One of the assignments of error questions the correctness of the court's ruling in giving the first instruction requested by the plaintiff. The substance of that instruction was that if the defendants permitted Hooper to hold himself out to the plaintiff as their agent in selling and negotiating trades concerning machinery, then they are bound by his acts as such agent. The objection made to the charge is that it was abstract. But we think there was evidence tending to prove the fact the instruction assumes, and nothing more was required to justify the court in giving it. 2 Kent's Com. 12th ed. 615; *Thurber* v. *Anderson*, 88 Ill. 167.

For the errors we have designated, the judgment will be reversed, and the cause remanded for a new trial.