WRIGHT *v.* LIBERTY CENTRAL TRUST COMPANY.

## Opinion delivered April 7, 1924.

1. SALES—INSTRUCTION—REVERSIBLE ERROR.—In an action on a trade acceptance given by defendant's wife for merchandise, where defendant denied that his wife had authority to make such purchase, and testified that, upon receipt of the merchandise, he notified the seller that he had not ordered the goods and requested instructions for its disposition, and that he was directed by the seller to place the goods on display and sell them for the seller if he could, which he did, but was able to sell but little of it, it was error to instruct the jury that if, after receipt of the goods, defendant attempted to dispose of it, he was liable, whether he authorized the purchase or not.

2. APPEAL AND ERROR—CONFLICTING INSTRUCTIONS—PREJUDICE.—The giving of conflicting instructions on the same point is deemed prejudicial to the appellant, as the court cannot know which instruction the jury followed.

Appeal from Sebastian Circuit Court, Greenwood District; *John E. Tatum,* Judge; reversed.

STATEMENT OF FACTS.

Liberty Central Trust Company sued B. A. Wright, before a justice of the peace, on account for goods and merchandise. The defendant denied buying any merchandise from the plaintiff. The justice of the peace rendered judgment for the defendant, and the plaintiff appealed to the circuit court.

The account of the plaintiff was represented by five trade acceptances for $59.60 each, drawn by the National Novelty Import Company on B. A. Wright, and purporting to have been signed by him. Each acceptance recites that the obligation of the acceptor arises out of the purchase of goods from the drawer.

R. Q. Kramer was a witness for the plaintiff. According to his testimony, he was a salesman for the National Novelty Import Company, in September, 1920, and stated that the trade acceptances, which are the basis of this suit, were signed either by B. A. Wright or by his wife. He admitted that a man named Ben Hendrix was present when the acceptances were signed. The

acceptances were assigned to the Central National Bank for value received, and the Liberty Central Trust Company as the successor of the Central National Bank.

Ben Hendrix was a witness for the defendant. He was present when an order for jewelry was given by Mrs. B. A. Wright to R. Q. Kramer. Mrs. B. A. Wright signed the trade acceptances sued on. During the time Mrs. B. A. Wright and R. Q. Kramer were talking about the sale of the jewelry, B. A. Wright came into the store, and was asked by Mr. Kramer to examine his goods. B. A. Wright told R. Q. Kramer that he did not have time to look at the goods, and that he did not want to see them. Wright did not sign the acceptances, or authorize any one else to do so.

B. A. Wright was a witness for himself. According to his testimony, his wife stayed in his store while he was absent, but had no interest whatever in it. He remembered the occasion when he entered the store and Kramer wanted him to look at some jewelry. He told Kramer that he did not want to see or purchase the jewelry. He then left the store, and did not authorize his wife either to purchase the jewelry or to sign the trade acceptances sued on. The first that he knew of his wife's having ordered the jewelry was when it was received and he opened the package containing it. Wright at once wrote the National Novelty Import Company that he did not want the goods, and asked what disposition he should make of them. In a short time Wright received a letter from the company telling him to place the goods on display and sell them for it if he could. He sold a few dollars' worth of the jewelry, and then notified the company that the jewelry was not salable. The company refused to take the jewelry, and sued him for the purchase price of the same. Wright never did consider the jewelry as his goods, and tried to ship them back to the seller.

The jury returned a verdict for the plaintiff, and from the judgment rendered the defendant has appealed.

*John W. Goolsby,* for appellant.

*Cravens & Cravens,* for appellee.

Every holder of a negotiable instrument is a holder in due course. C. & M. Digest, § 7825. Where one purchases goods for another, without authority, and the person for whom they are purchased receives and uses them on his own account, after being informed that they were purchased for him, this is a ratification of the act of making the purchase, and mere notification to the seller that the purchase was unauthorized is not sufficient, but he should restore the goods to the seller or pay for them. 28 Ark. 59; 124 Ark. 360; 55 Ark. 240; 21 R. C. L. 99; 145 S. W. 1116; 188 S. W. 728; 124 N. Y. Sup. 996. Appellant having accepted the benefits of the transaction, cannot now escape liability for the payment of same. 66 Ark. 209.

HART, J., (after stating the facts). Counsel for the defendant assigns as error the action of the court in giving instruction No. 2, which is as follows:

"You are instructed that if the defendant, after receipt of the goods in question, if in fact he did receive them, kept the same, or attempted to dispose of them, then the defendant is liable on the contract, whether he authorized the delivery of the goods to him in the first instance or not."

The instruction was erroneous, and necessarily prejudicial to the rights of the defendant. The instruction in express terms tells the jury that if the defendant, after the receipt of the goods, kept them, he is liable on the contract, whether he authorized it in the first instance or not. The theory of the defendant was that he did not know that his wife had ordered the goods for him until after he had received the package containing the jewelry and unpacked it. He wrote at once to the National Novelty Import Company, telling it that he did not want the jewelry and asking what disposition to make of it. The company directed him to keep the jewelry and to try to sell it for the company. He did so by special directions from the company, and his action in so doing could in no sense be said to ratify the unauthorized acts of his wife in purchasing the jewelry.

It is true that the theory of the defendant was submitted to the jury in an instruction asked by him, but the instruction given at his request was in direct conflict with instruction No. 2 given at the request of the plaintiff. It is well settled that the giving of conflicting instructions upon the same point is prejudicial to the rights of the party appealing. The reason is that this court cannot know which instruction the jury followed in arriving at its verdict. *Sweet* v. *McEwen,* 140 Ark. 162; *Henry Wrape Co.* v. *Barrentine,* 129 Ark. 111; *Goodell* v. *Bluff City Lumber Co.,* 57 Ark. 203; *Grayson-McLeod Lumber Co.* v. *Carter,* 76 Ark. 69; *McCurry* v. *Hawkins,* 83 Ark. 202; *Cornish* v. *Friedman,* 94 Ark. 282; *Hodge-Downey Const. Co.* v. *Carson,* 100 Ark. 433; and *Marianna Hotel Co.* v. *Livermore F. & M. Co.,* 107 Ark. 245.

It follows that, for the error in giving instruction No. 2 at the request of the plaintiff, the judgment must be reversed, and the cause remanded for a new trial.