J. C. CARLILE CORPORATION and The Travelers Indemnity Company, Appellants,

v.

FARMERS LIQUID FERTILIZER, INC., Appellee.

FARMERS LIQUID FERTILIZER, INC., Appellant,

v.

J. C. CARLILE CORPORATION and The Travelers Indemnity Company, Appellees.

Nos. 17768, 17771.

United States Court of Appeals Eighth Circuit.

June 4, 1965.

Edward Lester and Richard A. Williams, of Wright Lindsey, Jennings, Lester & Shults, Little Rock, Ark. made argument for J. C. Carlile Corp. and others and filed brief.

John D. Eldridge, Augusta, Ark., and Louis Tarlowski, Little Rock, Ark., made argument for Farmers Liquid Fertilizer and filed brief.

Before VAN OOSTERHOUT, BLACK-MUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

This is an appeal and cross-appeal from a judgment in the United States District Court for the Eastern District of Arkansas awarding plaintiff-appellee, Farmers Liquid Fertilizer, Inc., $56,700.-00 for breach of a construction contract. Under the terms of the contract, defendants-appellants, J. C. Carlile Corporation as contractor and The Travelers Indemnity Company as surety, had agreed to build Farmers a dry blend, commercial, fertilizer plant on Farmers' property in Patterson, Arkansas.

The issues below, sounding in contract and tort, were submitted to the jury in the form of special interrogatories.[1] In summary, the jury found that while the

1. Appellee (Farmers) brought this action for breach of contract and return of $57,000.00 paid appellant (Carlile) upon the $60,000.00 construction contract. Appellant counterclaimed asserting the negligence of appellee as a proximate cause of the fire and resulting loss. In subsequent pleadings appellee alleged negligence on the part of appellant as the cause of the fire and loss. The trial court in its instructions to the jury defined the issues as follows:

"Now plaintiff (Farmers) seeks recovery against defendants on one of three theories, as follows: (1) that defendant Carlile breached the terms of the contract by failing to construct and complete the fertilizer plant; or, (2) that defendant Carlile induced plaintiff not to obtain fire insurance on the plant by promising plaintiff that defendant Carlile had builders risk insurance fully covering the plant which would not be cancelled until plaintiff procured insurance to cover the plant and plaintiff relied on this promise to its detriment; or (3)—these are contentions of plaintiff—(3) that the fire which destroyed the fertilizer plant was proximately caused by the negligence of defendant Carlile.

"Now, the defendant Carlile and the defendant Travelers Indemnity Co. deny that the contract was breached as plaintiff alleges, and further contend that construction of the plant was completed and it had been accepted by plaintiff prior to the fire. Defendants deny that any promise in reference to insurance was made to plaintiff as alleged, and further contend that if the promise was made it was not given to a party acting on behalf of the plaintiff Farmers so as to be binding on Carlile. The defendant Carlile denies that the fire which destroyed the plant was caused by any negligence on the part of this defendant, as plaintiff has alleged. Defendant Carlile has filed its counterclaim for the value of the equipment and materials furnished, as well as for the labor performed, which totals a certain amount, with which you are not concerned. In the alternative defendant Carlile asserts that the fire which destroyed the plant was proximately caused by the negligence of the plaintiff Farmers, and if the plaintiff is found to be entitled to any recovery for the construction of the plant, defendant Carlile is entitled to a judgment over against plaintiff on the theory that plaintiff negligently caused the destruction of the plant." (R. pp. 150–151)

fertilizer plant which was destroyed by fire on February 19, 1963 did not burn as the result of negligence of either Farmers or Carlile, the risk of loss fell upon the contractor and its surety because construction of the plant had not been substantially completed and "accepted" within the intendment of the contract at the time of the fire.

The appellants seek a reversal based on the contentions that the District Court erred (1) in overruling their motion for a judgment notwithstanding the verdict because there was no evidence supporting the jury's finding that appellee had not accepted the plant prior to the fire; (2) by refusing to instruct the jury that the insurance provisions of the contract placed the risk of loss on appellee;[2] and (3) by giving the jury a binding instruction on negligence which lacked evidentiary basis and conflicted with other of its instructions on fault.

■ This action was properly removed from state to federal court based on diversity jurisdiction. Since the construction contract was executed and performed in Arkansas where the loss also occurred, the substantive law of that jurisdiction applies.

We need not reach the first two assignments of error since this case must be reversed for the giving of an erroneous instruction. The District Court upon appellee's request gave the following instruction designated by the parties as No. 3:

Instruction No. 3. "You are instructed that if you find from a preponderance of the evidence that the plaintiff, Farmers, reasonably relied on the defendant's advice or design as to the construction and adequacy of the loft or deck above the office for the storage of fertilizer sacks of a quantity placed on that deck by the plaintiff and that Farmers did not know or have reason to believe that the weight might cause the structure to collapse, then the plaintiff, Farmers, would not be guilty of negligence and you should answer Interrogatory No. 8 in the negative."[3]

Appellants timely and specifically objected to the giving of Instruction No. 3, but this objection was overruled by the court.

■ Instruction No. 3 bound the jury to answer Interrogatory No. 8 in the negative (finding appellee not guilty of negligence) merely upon a finding that appellee was not negligent if it reasonably relied upon appellants' advice or design as to the construction of the deck and did not know or have reason to be-

---

2. The contract was typewritten on the face of Carlile's "Sales Contract" form which contained on the reverse side of each page printed "General Conditions of Sale" usually found in conditional sales contracts. Embodied in the contract is a typewritten provision entitled "Clarification of General Conditions of Sale, as Set Forth on Reverse Side." This portion of the contract purports to omit, keep in effect or amend certain conditions in the printed "General Conditions of Sale." Carlile argues that a sentence in the printed portion—"Buyer agrees to keep equipment insured at his expense, loss, if any, to be payable to Seller as his interest may appear, until purchase price shall be paid in full."—placed the risk of loss on appellee. A typewritten paragraph on the face of the contract, however, indicates a possible intent to place the burden of carrying insurance upon appellant—"Carlile agrees to pro-

tect client from liabilities occurring in the construction of the plant by carrying all necessary, required insurance, both as to damage to persons and property, including workmen's compensation insurance." The record does not indicate that the trial court resolved this apparent ambiguity in the terms of the contract or submitted the construction thereof to the jury.

3. Interrogatory No. 8 states:
"Do you find from a preponderance of the evidence that Farmers Liquid Fertilizer, Inc., or any agent or employee of Farmers Liquid Fertilizer, Inc., while acting in the scope of his or their employment, was negligent, and that such negligence caused or contributed to cause the fire and was a proximate cause of the fire? Answer .................."
(Yes or No)

lieve the weight might cause the structure to collapse.

This instruction completely ignored appellants' theory that appellee was negligent in the actual construction of the storage deck. The error of omission is obvious for the reason that appellee could reasonably have relied on appellants' design and still have performed the construction in a careless or negligent manner. Therefore, the jury should not have been bound to find appellee free of negligence without consideration of this material issue.

This instruction was not only incomplete but also irreconcilably conflicted with Instruction No. 5 given by the court:

> Instruction No. 5. "If you find from a preponderance of the evidence that the employees of Farmers did not exercise ordinary care in constructing the office partitions and deck for the purpose for which it was intended, and that such failure to exercise ordinary care, if any, was a proximate cause of the fire, then you should find in the appropriate interrogatory submitted to you that Farmers was negligent."

■ The Arkansas Supreme Court has held in an unbroken line of cases, commencing before the turn of the century, that an instruction which ignores a material issue in a case about which the evidence is conflicting and allows the jury to find a verdict without considering that issue, is misleading and prejudicial even though another instruction which correctly presents that issue is contained in other parts of the charge. This was so stated in the leading case of St. Louis, I. M. & S. Ry. v. Rogers, 93 Ark. 564, 126 S.W. 375, 378–379 (1910), wherein the Arkansas court also ruled:

> "Where the instructions are thus conflicting, it is impossible for an appellate court to tell which of them the jury followed, and such an error calls for a reversal. Separate and disconnected instructions, each complete in itself and irreconcilable with

each other, cannot be read together so as to modify each other and present a harmonious whole. Selden v. State, 55 Ark. 393, 18 S.W. 459; Goodell v. Bluff City Lbr. Co., 57 Ark. 203, 21 S.W. 104; Rector v. Robins, 74 Ark. 437, 86 S.W. 667; Fletcher v. Eagle, 74 Ark. 585, 86 S.W. 810, 109 Am.St.Rep. 100; St. L. & N. A. R. R. Co. v. Midkiff, 75 Ark. 263, 87 S.W. 446; Grayson-McLeod Lumber Co. v. Carter, 76 Ark. 69, 88 S.W. 597; St. L., I. M. & S. Ry. Co. v. Hitt, 76 Ark. 224, 88 S.W. 911; Bayles v. Daugherty, 77 Ark. 201, 91 S.W. 304; White River L. & W. Ry. Co. v. Star, R. & L. Co., 77 Ark. 128, 91 S.W. 14; Merchants' Fire Ins. Co. v. McAdams, 88 Ark. 550, 115 S.W. 175; Jones v. State, 89 Ark. 213, 116 S.W. 230; So. Anthracite Coal Co. v. Bowen [93 Ark. 140], 124 S.W. 1048."

Accord: W. C. Nabors Co. v. Ball Chevrolet Co., 201 Ark. 486, 145 S.W.2d 25 (1940); Mo. Pac. Transportation Co. v. Howard, 201 Ark. 6, 143 S.W.2d 538 (1940); Herring v. Bollinger, 181 Ark. 925, 29 S.W.2d 676 (1930).

Instructions Numbers 3 and 5 are inconsistent, cannot be read together so as to modify each other, and, therefore, do not present a harmonious whole. They could only serve to mislead and confuse the jury. In Temple Cotton Oil Co. v. Skinner, 176 Ark. 17, 2 S.W.2d 676, 679 (1928), the Arkansas court stated:

> "We all agree that an instruction should be complete in itself when it undertakes to tell the jury when a verdict should be returned for the plaintiff and that the trial court should not instruct the jury that it must find for the plaintiff or the defendant as the case might be upon a partial or incomplete statement of the law applicable to the material facts of the case. We also agree that where the body of the instruction does not contain every material fact proper to be established, what is called in Winter v. Bandel, 30 Ark. 362, page 376, the stereotyped 'find

for the plaintiff' had better be left off."

No distinction can be made here because the instant case was submitted on interrogatories rather than for a general jury verdict. The prejudicial effect of the error would be the same. Under either form of submission, Instruction No. 3 would remain incomplete and in conflict with another instruction and thus would mislead the jury to appellants' prejudice.

For the reasons expressed herein, the judgment is reversed, and the case remanded.