**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 31, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

IN RE: MIDPOINT
DEVELOPMENT, L.L.C.

    Debtor,

CLAUDIA S. HOLLIMAN and
GARY WEST, Trustee of the 1990
Grieser Trust,

    Appellees.

v.

MIDPOINT DEVELOPMENT,
L.L.C.,

    Appellant.

No. 05-6046

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CV-04-1509-R)**
**(Bankruptcy Court No. 04-16795-BH)**

---

Bobbie Bayless of Bayless & Stokes, Houston, Texas, (Michael Paul
Kirschner and Lorrie A. Corbin of Kirschner, Kisner, Lee, PLLC,
Oklahoma City, Oklahoma, also on the briefs), for Appellant.

Harvey D. Ellis, Jr. of Crowe & Dunlevy, Oklahoma City, Oklahoma
(Jimmy Goodman, William H. Hoch, and Reagen D. Allen of Crowe &
Dunlevy, Oklahoma City, Oklahoma; Douglas N. Gould, Oklahoma City,
Oklahoma, also on the brief), for Appellees.

Before **TACHA,** Chief Circuit Judge, **BRISCOE,** and **HARTZ**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Midpoint Development, L.L.C., ("Midpoint") appeals the district court's dismissal of Midpoint's Chapter 11 bankruptcy petition. The district court dismissed Midpoint's bankruptcy petition after concluding that Midpoint had ceased to legally exist prior to its bankruptcy filing. We exercise jurisdiction pursuant to 28 U.S.C. § 158(d) and affirm the district court.

I.

On November 14, 2003, Meredith Brown, the sole member of Midpoint, executed "Authorization of Dissolution of L.L.C. upon unanimous consent of members," and "Articles of Dissolution of an Oklahoma Limited Liability Company." The authorization of dissolution stated, in relevant part:

> The purpose of this action is to effect a dissolution of the L.L.C., pursuant to 18 O.S. § 2037, by action of all Members. The sole Member of the L.L.C. has determined . . . that the L.L.C. should be dissolved, and articles of dissolution filed with the Oklahoma Secretary of State, in compliance with 18 O.S. § 2041.

The articles of dissolution stated, in relevant part:

-2-

The undersigned, for the purpose of dissolving an Oklahoma limited liability company pursuant to the provisions of Title 18, Section 2041, does hereby execute the following articles:

1.  The name of the limited liability company is: Midpoint Development, L.L.C..

2.  The date of filing of its articles of organization: June 4, 1996.

3.  The reason for filing the articles of dissolution: cessation of business and winding up of affairs.

4.  <u>The effective date of the articles of dissolution if they are not to be effective upon filing of these articles: November 14, 2003</u>. (Emphasis added).

Brown filed the articles of dissolution with the Oklahoma Secretary of State on November 14, 2003 and received a "Certificate of Dissolution of Limited Liability Company." On the same day, after filing the articles of dissolution with the Oklahoma Secretary of State, Brown petitioned the District Court for Oklahoma County, Oklahoma, for the appointment of a receiver to complete the "winding up" of Midpoint's affairs. Brown attached to the petition an executed application for the appointment of a receiver to do the following:

all such acts as may be necessary for the final settlement of the business of the L.L.C., including, but not limited to . . . prosecution of all litigation in which the L.L.C. is a party Plaintiff, defense of all litigation in which the L.L.C. is a party Defendant, prosecution of all claims of the L.L.C. for the benefit of its creditors and Member, and defense of the wrongful claims against the L.L.C. for the benefit of its creditors and members.

The document also nominated and consented to the appointment of David Payne as receiver "to wind up the business or affairs of the L.L.C., as conferred by 18 O.S. § 2039 and 2040, and as conferred upon a receiver by 12 O.S. § 1551, et seq." On the same day, the state court entered an uncontested order appointing Payne as Midpoint's receiver.

On June 22, 2004, Midpoint filed a petition for bankruptcy relief in the United States Bankruptcy Court for the Western District of Oklahoma pursuant to Title 11 of the United States Bankruptcy Code.[1] Creditors Claudia Holliman and Gary West ("Creditors") filed a joint motion to dismiss Midpoint's Chapter 11 petition, arguing that Midpoint was ineligible to be a debtor because it ceased to legally exist after the effective date of its articles of dissolution. The bankruptcy court denied the motion to dismiss, concluding that Midpoint was eligible for bankruptcy relief because a limited liability company is empowered to wind up its affairs after dissolution, including filing for bankruptcy. In re Midpoint Dev., L.L.C., 313 B.R. 486, 488-89 (Bankr. W.D. Okla. 2004). The district court reversed the bankruptcy court's order because it determined that Midpoint ceased to legally exist after the effective date of its articles of dissolution.

---

[1] Midpoint, along with several other entities, previously filed for bankruptcy on March 18, 2003. This action was dismissed for cause on November 10, 2003.

-4-

In Re Midpoint Dev., L.L.C., No. 04-1509-R, slip op. at 7 (W.D. Okla. Feb. 3, 2005).

## II.

Midpoint argues that the district court erred in concluding that an Oklahoma limited liability company ceases to exist upon the effective date of articles of dissolution. Midpoint contends that a dissolved L.L.C. maintains a legal existence through the winding up process initiated by filing articles of dissolution. The issue for us to resolve is whether an Oklahoma limited liability company's legal existence terminates upon the effective date of filing articles of dissolution with the Secretary of State or whether the L.L.C. continues to exist for the purpose of winding up its affairs, including the right to file for bankruptcy.

"On an appeal of a bankruptcy case, we review the legal conclusions of the bankruptcy court and the district court de novo." McKowen v. Internal Revenue Serv., 370 F.3d 1023, 1025 (10th Cir. 2004). "In the context of voluntary bankruptcy, the United States Supreme Court has consistently held that a corporation's ability to avail itself of the bankruptcy laws depends on how the state in which it was incorporated defines its existence after dissolution." In re Anderson, 94 B.R. 153, 156 (Bankr. W.D. Mo. 1988). Therefore, we look to Oklahoma law to determine

whether a limited liability company ceases to exist after the effective date of its articles of dissolution.

The Oklahoma Limited Liability Company Act ("OLLCA"), passed in 1992 and amended in 2004, governs the formation, operation, and dissolution of Oklahoma limited liability companies. The issue on appeal is therefore determined by an examination of the relevant provisions of the OLLCA. "[T]o ascertain the intention of the legislature, 'all the various portions of the legislative enactments on the particular subject, including subsequent enactments, should be construed together and given effect as a whole.'" Ashby v. Harris, 918 P.2d 744, 748 (Okla. 1996) (quoting Indep. School Dist. v. Oklahoma City Fed. of Teachers, 612 P.2d 719, 721 (Okla. 1980)).

Because Midpoint filed its articles of dissolution and its bankruptcy petition before the November 1, 2004 amendments to the OLLCA became effective, the pre-2004 OLLCA applies to the current action. However, because the Oklahoma Supreme Court "recognizes that by amending a statute the Legislature may have intended (1) to change existing law or (2) to clarify ambiguous law," this court may consider the 2004 amendments in determining whether, under the OLLCA, an L.L.C. ceases to exist upon the effective date of its articles of dissolution. Samman v. Multiple Injury

Trust Fund, 33 P.3d 302, 307 (Okla. 2001).

An Oklahoma L.L.C. comes into legal existence with the filing of executed articles of organization with the Office of the Secretary of State. 18 O.S. § 2004(A) and (B). Section 2007, in relevant part, provides: "upon the effective date of articles of dissolution or a decree of judicial dissolution, the articles of organization are cancelled." 18 O.S. § 2007(B). Although not explicitly stated, it is reasonable to conclude that an L.L.C. ceases to exist when its articles of organization are cancelled. We agree with the district court's conclusion that "these two provisions, taken together, suggest that the legal existence of an Oklahoma limited liability company ceases to exist upon the effective date of articles of dissolution or a decree of judicial dissolution." In re Midpoint Dev., No. 04-1509 at 3. This conclusion is further bolstered by the post-2004 amended Section 2004(B)(1), which clarifies the original Section 2004 and states, in relevant part:

> A limited liability company formed under this act is a separate legal entity, the existence of which as a separate legal entity continues until cancellation of the limited liability company's articles of organization. 18 O.S. § 2004(B)(1).

Because a subsequent amendment to an act can be used to ascertain the meaning of a prior statute where the meaning of the prior statute is subject to serious doubt and has not been judicially determined, we can consider

-7-

this amended provision in determining the meaning of the original Section 2004. Quail Creek Golf and Country Club v. Oklahoma Tax Comm'n, 913 P.2d 302, 304 (Okla. 1996). This section clarifies the earlier provision by expressly indicating when an L.L.C. ceases to exist; the prior provision merely indicated when an L.L.C. came into being.

Midpoint argues that the district court misinterpreted the meaning of 18 O.S. § 2007(B), both before and after the 2004 amendments. The 2004 amendments redesignated subsection B as C and amended it to read as follows:

> Unless a later effective date or time, which shall be a specified date or time no later than a time on the nineteenth day after the filing, as provided in the articles, articles of amendment, merger, consolidation, conversion or dissolution are effective at the time of their filing with the Secretary of State. 18 O.S. § 2007(C).

Because it is a legal impossibility for a company to wind up its affairs in nineteen days, Midpoint claims that the legal intent of 18 O.S. § 2007 cannot be read to require an Oklahoma limited liability company to be immediately cancelled or have little to no time to wind up its affairs after filing articles of dissolution. Rather, it asserts that this new language merely clarifies the Oklahoma legislature's intent, which has always viewed dissolution as a three part process, including: (1) an act of dissolution; (2) filing of the articles of dissolution, and; (3) a winding up

-8-

period.

We are unpersuaded by this interpretation of Section 2007. Because the 1992 version of Section 2007 is unambiguous, we view the 2004 amendment as a change in the law, rather than a clarifying amendment, and will not apply it retroactively to Midpoint. See Samman, 33 P.3d at 307(noting that when earlier version of statute definitely expresses clear and unambiguous intent, legislative amendment is presumed to change existing law). The pre-2004 Section 2007, which applies to Midpoint, expressly provides that articles of organization are cancelled upon the effective date of articles of dissolution. Midpoint's argument still fails, even with a consideration of the amended provision, because nothing in the amended language suggests that an L.L.C. continues to legally exist and has an unspecified amount of time to wind up its affairs after the effective date of articles of dissolution.

The express language of Section 2007 is further clarified by other sections of the statute, including Sections 2037, 2041, and 2055, which when read together indicate that dissolution and the winding up period should precede the effective date of articles of dissolution, which ultimately terminates an L.L.C.'s legal existence by cancelling its articles of organization. Section 2037 was amended in 2004, but in no way material

to this case; Sections 2041 and 2055 were not amended in 2004.

Section 2037 provides, in relevant part, that "[a] limited liability company is dissolved and its affairs shall be wound up upon the earlier of . . . the written consent of all the members." 18 O.S. § 2037. Filing articles of dissolution must be authorized by action of all the members of an L.L.C. In the present case, Midpoint's sole member, Meredith Brown, entered her written consent to file articles of dissolution for Midpoint with an effective date of November 14, 2003. Therefore, Midpoint's affairs should have been wound up prior to filing articles of dissolution with an immediate effective date.

Section 2041 provides:

After the dissolution of the limited liability company, pursuant to Section 2037 of this title, the limited liability company shall file articles of dissolution in the Office of the Secretary of State upon payment of the filing fee required by Section 2055 of this title, the articles of dissolution shall set forth: . . .

4. The effective date of the articles of dissolution if they are not to be effective upon the filing. 18 O.S. § 2041.

This provision expressly states that an L.L.C. may choose to file its articles of dissolution on a certain date, but indicate a date in the future for the articles to become effective, thereby allowing time for a winding up of the L.L.C.'s affairs. Midpoint's interpretation of the statute would render this provision meaningless, as there would be no reason to designate an

-10-

effective date for articles of dissolution if the designated date had no legal effect upon the existence of the limited liability company. An L.L.C. is not free to take an unspecified amount of time to wind up its affairs after filing articles of dissolution; it must wind up its affairs prior to the effective date of the articles of dissolution.

Finally, Section 2055 states in relevant part that "[t]he Secretary of State shall charge and collect the following fees . . . for filing articles of dissolution and issuing a certificate of cancellation, a fee of Fifty Dollars ($50.00)." 18 O.S. § 2055. In addition Section 2055.2 (F) provides:

> A domestic limited liability company that has ceased to be in good standing by reason of its neglect, refusal or failure to file an annual certificate with the Secretary of State or pay the registered agent fee to the Secretary of State shall remain a domestic limited liability company formed under this act until dissolution of its articles of organization. 18 O.S. § 2055.2 (F).

Taken together and read as a whole, these provisions of the OLLCA indicate that the legislature intended that an Oklahoma L.L.C. dissolve and wind up its affairs (§ 2037) prior to the effective date of its articles of dissolution (§ 2041). Because the statute indicates that articles of dissolution cancel the articles of organization (§§ 2007(B), 2055), which created the L.L.C., an Oklahoma limited liability corporation ceases to exist upon the date that articles of dissolution become effective.

Midpoint asserts that Sections 2012.1, 2039, and 2040 contradict this

interpretation and instead indicate that an L.L.C. continues to exist after articles of dissolution are filed and after the effective date of articles of dissolution. Section 2012.1 states, in relevant part, that "[t]he articles of organization shall be canceled upon the dissolution and the completion of winding up of a limited liability company." Midpoint argues that this provision demonstrates that winding up continues beyond the filing of articles of dissolution and beyond the effective date of the articles of dissolution. We conclude this provision supports, rather than contradicts, our interpretation of the statute. Other provisions of the statute (§§ 2007(B), 2055) state that articles of dissolution cancel articles of organization, which has the effect of terminating an L.L.C.'s legal existence. When Section 2012.1 is read in harmony with those statutes, the import of Section 2012.1 is that an L.L.C. should wind up its affairs prior to the effective date of its articles of dissolution.

Sections 2039 and 2040 dictate how an L.L.C. can wind up its affairs and how the company's assets should be distributed upon winding up. Neither of these provisions demonstrate that an L.L.C. continues to legally exist after the effective date of its articles of dissolution. They merely describe the winding up process, which the statute indicates should precede the date upon which articles of dissolution become effective.

Even if this court were persuaded by Midpoint's interpretation of the OLLCA, its own act of designating November 14, 2003 as the effective date of its articles of dissolution left Midpoint with no period in which to wind up its affairs. If Midpoint sought a significant period of time to wind up its affairs, including filing for bankruptcy, it should have begun winding up its affairs prior to filing articles of dissolution or set the effective date for its articles of dissolution far in the future.

Finally, Midpoint argues that it demonstrated a clear intent to wind up its affairs after filing its articles of dissolution. However, Midpoint cites no authority to support its assertion that its intent in filing articles of dissolution would trump the legal effect granted to the document by statute. In any event, Midpoint would not have been able to change the effective date of its articles of dissolution. Section 2012 permits an LLC to file articles of correction if "any document" filed with the Secretary of State's office pursuant to the OLLCA "contains any typographical error, error of transcription, or other technical error." 18 O.S. § 2012(A). However, that section expressly provides that the articles of correction "may not . . . [c]hange the effective date of the document being corrected . . . or . . . [a]ffect any right or liability accrued or incurred before its filing." Id.

We conclude that Midpoint ceased to exist as a legal entity upon the

effective filing date of its articles of dissolution, which was November 14, 2003. Because Midpoint did not file for bankruptcy until June 22, 2004, over seven months after filing its articles of dissolution, its bankruptcy filing was a nullity and subject to dismissal.

### III.

Midpoint filed a motion to certify the question on appeal to the Oklahoma Supreme Court. Tenth Circuit Rule 27.1(A) governs certification of questions of state law and provides that "[w]hen state law permits, this court may: (1) certify a question arising under state law to that state's highest court according to that court's rules; and (2) stay the case in this court to await the state court's decision of the certified question." 10th Cir. R. 27.1(A). Oklahoma state law permits the Oklahoma Supreme Court to answer questions of state law certified to it "by a court of the United States . . . if the answer may be determinative of an issue pending litigation in the certifying court and there is no controlling decision of the Supreme Court . . ., constitutional provision, or statute of this state." 20 O.S. § 1602 (2005).

We "generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court." Massengale v. Oklahoma Bd. Of

<u>Exam'rs in Optometry</u>, 30 F.3d 1325, 1331 (10th Cir. 1994).  Midpoint did not seek certification until after it received an adverse decision from the district court.  We conclude that certification is not merited here and deny Midpoint's motion.

IV.

We AFFIRM the district court's order and DENY the motion for certification.

05-6046, *In re: Midpoint Development, L.L.C.*

**HARTZ**, Circuit Judge concurring:

I join in parts I, III, and IV of the opinion. In my view, the pre-2004 statute, particularly 18 O.S. § 2007(B), unambiguously provides that the legal existence of an L.L.C. ends upon the effective date of articles of dissolution.