2012 OK CIV APP 51

**AT & T ADVERTISING, L.P. d/b/a AT & T Advertising & Publishing, Plaintiff/Appellee,**

v.

**E. Vance WINNINGHAM, Defendant/Appellant.**

No. 109,836.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 13, 2012.

Ken Felker, Lori A. Sander, Katherine A. Smith, Felker, Sander & Associates, P.C., Oklahoma City, OK, for Plaintiff/Appellee.

Jay G. Israel, Oklahoma City, OK, for Defendant/Appellant.

KENNETH L. BUETTNER, Presiding Judge.

¶1 Defendant/Appellant E. Vance Winningham appeals from summary judgment granted in favor of Plaintiff/Appellee AT & T Advertising, L.P., d/b/a AT & T Advertising & Publishing, in AT & T's suit against Winningham to recover money owed on contracts for advertising. The material facts are undisputed and they show that Winningham signed the contracts and owed the balance claimed. Winningham claimed that he executed the contracts on behalf of an LLC and was therefore not personally liable. The LLC was cancelled by the Secretary of State before Winningham signed the contracts. It therefore was not a legal entity in existence when the contracts were signed and Winningham was not shielded from liability by an LLC. We affirm.

¶2 AT & T filed its Petition September 4, 2009. In its Motion for Summary Judgment, filed April 1, 2011, AT & T included 20 statements of undisputed facts.[1] AT & T claimed that Winningham signed the contracts when AVA was not a legal entity and that accordingly, Winningham was personally liable for the debts. AT & T attached the contracts signed by Winningham, as well as a record from the Oklahoma Secretary of State showing AVA was cancelled July 1, 2007 and later filed Articles of Conversion to a Professional Corporation July 14, 2009.

¶3 In his Response, Winningham denied the statements of fact regarding the amounts owed on the contracts because those statements were supported by an unsworn state-

---

1. AT & T asserted there was no dispute that: 1) Winningham executed a contract August 14, 2007, for the purchase of advertising in AT & T's 2007 Tulsa Yellow Page Directory; 2) the outstanding balance for the 2007 Tulsa advertising is $3,151.62; 3) Winningham executed a contract August 30, 2007, for the purchase of advertising in AT & T's 2007 Stillwater Yellow Page Directory; 4) the outstanding balance for the 2007 Stillwater advertising is $636.90; 5) Winningham executed a contract December 17, 2007, for the purchase of advertising in AT & T's 2008 Norman/Moore Yellow Page Directory; 6) the outstanding balance for the Norman/Moore advertising is $894.28; 7) Winningham executed contracts May 29, 2008, for the purchase of advertising in AT & T's 2008 Oklahoma City companion and regular Yellow Page Directories; 8) the outstanding balance for the 2008 Oklahoma City contract is $15,990.12; 9) Winningham executed a contract August 15, 2008, for the purchase of advertising in AT & T's 2008 Tulsa Yellow Page Directory; 10) the outstanding balance for the 2008 Tulsa contract is $8,674.33; 11) Winningham executed a contract August 28, 2008, for the purchase of advertising in AT & T's 2008 Stillwater Yellow Page Directory; 12) the outstanding balance for the 2008 Stillwater advertising is $1,950.75; 13) Winningham executed a contract August 28, 2008, for the purchase of advertising in AT & T's 2008 Lawton Yellow Page Directory; 14) the outstanding balance for the 2008 Lawton advertising is $2,407.19; 15) the late charges associated with Winningham's account are $583.44; the total due after all applicable credits and offsets is $34,288.63; 16) all of the advertisements were printed correctly pursuant to the contracts; 17) Winningham signed each contract underneath a sentence directing him to read all terms and conditions before signing; the Terms and Conditions provided that if the customer failed to pay charges when due, AT & T may accelerate the billing and collection of all remaining charges without notice to customer, including charges that are separately billed and not past due; 18) Winningham admits that he signed the contracts, but claims he did so as an agent of "American Visa Attorneys, P.L.C." or "American Visa Attorneys, P.C." (collectively, AVA) and that he should not be personally liable therefor; 19) American Visa Attorneys P.L.C. was formed December 5, 2002 and was cancelled on July 1, 2007; on July 14, 2009, American Visa Attorneys, P.L.C. presumably became reinstated and filed its Articles of Conversion, thereby converting itself to a professional corporation, American Visa Attorneys, P.C.; and 20) from July 1, 2007 to July 14, 2009, AVA was not a legally cognizable entity.

ment.[2] Winningham otherwise admitted AT & T's statements 1–16. He denied statement 17 to the extent it indicated Winningham signed the contracts in his individual capacity rather than as agent for AVA. Winningham admitted statements 18 and 19. Finally, he asserted that statement 20 was a conclusion of law which he disputed. Winningham argued that a member of an LLC is not liable for the debts of the LLC "solely by reason of the failure of the (LLC) to file" the annual certificate and fees with the Secretary of State, citing 18 O.S.2001 § 2055.2(I).

¶ 4 AT & T filed a Reply to Winningham's Objection May 12, 2011. AT & T asserted that *In re Midpoint Development*, 466 F.3d 1201 (10th Cir.2006) noted that an Oklahoma LLC which has been cancelled is no longer a legal entity, pursuant to 18 O.S.Supp.2004 § 2004(B)(1). AT & T further averred that according to 18 O.S.Supp.2004 § 2012.1(B), an LLC is deemed cancelled by the Secretary of State when the LLC has failed to file a certificate within three·years of the due date. AT & T argued that because AVA had been cancelled and was not a legally cognizable entity, it was therefore not capable of contracting and Winningham was personally liable for the contracts.

¶ 5 Winningham filed his own Motion for Summary Judgment May 24, 2011. He contended the facts were not in dispute and that the case presented the legal question of "the status of a debt of an LLC incurred while suspended for failure to pay its annual franchise fee and the personal liability if any, of the Defendant after reinstatement."

¶ 6 In response, AT & T asserted the issue before the court was whether the contracts were executed on behalf of a legally cognizable entity. AT & T disputed Winningham's assertion that he signed the contracts in a representative capacity based on AT & T's claim that AVA was not a legal entity when the contracts were executed. AT & T contended that the fact the print ads listed AVA had no bearing on whether AVA was a legal entity when the contracts were executed. Finally, AT & T disputed Winningham's claim that the contracts were made while AVA was suspended, based on AT & T's claim AVA was in fact cancelled, which AT & T contended was a distinct event from suspension with distinct consequences. AT & T asserted that Winningham was not entitled to judgment because he admitted he signed the contracts and he acknowledged full performance by AT & T as well as the validity of the balances due, and that AVA was cancelled at all relevant times.

¶ 7 Following a hearing held July 21, 2011, the trial court granted summary judgment to AT & T in the amount of $34,288.63, with interest, costs and attorney fees. Winningham appeals.

¶ 8 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 9 The question of law presented here is whether an LLC, which has been cancelled by the Secretary of State for nonpayment of fees for three years, provides a liability shield for its agent. The facts material to that question are not disputed.[3]

---

**2.** In its Reply, AT & T cited 12 O.S.2001 § 426 as authority for its assertion that the unsworn statement of Timothy Lee, AT & T Customer Relations Representative, was admissible in support of summary judgment. The statement was not notarized but it did include an oath indicating it was signed under penalty of perjury. Winningham did not continue to contest this issue and we find the statement admissible to support a motion for summary judgment.

**3.** AT & T attached to its Motion for Summary Judgment Winningham's Answers to Interrogatories, in which he averred he signed the contracts as agent for AVA. The contracts themselves include no indication Winningham signed as an agent. Accordingly, whether Winningham was a

¶ 10 Winningham sought to avoid liability under the following provision of the Oklahoma Limited Liability Company Act ("the Act"):

\* \* \*

> I. A member or manager of a domestic limited liability company ... is not liable for the debts, obligations or liabilities of the domestic limited liability company ... solely by reason of the failure of the domestic limited liability company ... to file an annual certificate and pay an annual certificate fee or a registered agent fee to the Secretary of State or by reason of the domestic limited liability company ... ceasing to be in good standing or duly registered.

18 O.S.Supp.2004 § 2055.2. According to Winningham, once an LLC is created, its members will be free from liability for acts on behalf of the LLC in perpetuity unless the LLC voluntarily files for dissolution. AT & T counters that reading the Act in its entirety shows that Section 2055.2(I) applies where an LLC is "not in good standing" and only until the LLC is either dissolved or cancelled. We agree with AT & T that if we adopted Winningham's interpretation of the Act, there would be no motivation for an LLC ever to pay the fees or file the certificate required by the Act.

¶ 11 Under the Act, articles of organization are essential to an LLC's formation and existence as a separate legal entity. 18 O.S.Supp.2004 § 2001 and § 2004. The Act provides for cancellation of the articles of organization in Section 2012.1.[4] Cancellation may occur either by the LLC filing notice of dissolution or by the LLC being deemed cancelled for failing to file the annual certificate or failing to pay the annual fee within three years of the date due. Section 2055.2, on which Winningham relies, includes express language distinguishing a cancelled LLC from one not in good standing.[5] Win-

---

disclosed agent is a disputed fact, but our analysis below shows that fact is not material to this case. For purposes of this decision, we assume without deciding, that Winningham was an agent for AVA.

**4.** That section provides, in pertinent part:

\* \* \*

B. The articles of organization of a domestic limited liability company shall be deemed to be cancelled if the domestic limited liability company fails to file the annual certificate and pay the annual fee provided in Section 2055.2 of this title or pay the registered agent fee to the Secretary of State due under Section 2055 of this title within three (3) years from the date the certificate or fee is due, the cancellation to be effective on the third anniversary of the due date.

\* \* \*

**5.** Section 2055.2, Annual certificate for domestic limited liability company and foreign limited liability company, provides (emphasis added):

A. Every domestic limited liability company ... registered to do business in this state shall file a certificate each year in the Office of the Secretary of State, which confirms it is an active business and includes its principal place of business address.

B. *The annual certificate shall be due on the anniversary date of filing the articles of organization or registration, as the case may be, until cancellation of the articles of organization* or withdrawal of the registration.

C. The Secretary of State shall, at least sixty (60) days before the anniversary date of each year, cause to be mailed a notice of the annual certificate to each domestic limited liability company ... required to comply with the provisions of this section to its last known principal place of business address of record with the Secretary of State.

D. A domestic *limited liability company ... that fails to file the annual certificate and pay the annual certificate fee within sixty (60) days after the date due shall cease to be in good standing* as a domestic limited liability company ... in this state.

E. Except for accepting a resignation of a registered agent when a successor registered agent is not being appointed or an application for reinstatement, *the Secretary of State shall not accept for filing any certificate or articles, or issue any certificate of good standing, in respect to any domestic limited liability company that has ceased to be in good standing ..., unless or until the domestic limited liability company has been reinstated as a domestic limited liability company* in good standing ... in this state.

F. A domestic limited liability company that has ceased to be in good standing ... in this state may not maintain any action, suit or proceeding in any court of this state until the domestic limited liability company has been reinstated as a domestic limited liability company in good standing ... in this state. An action, suit or proceeding may not be maintained in any court of this state by any successor or assignee of the domestic limited liability company ... on any right, claim or demand arising out of the transaction of business by the domestic limited liability company after it has ceased to be in good standing ... in this state until the domestic limited liability company ..., or any person that has acquired all

ningham's argument on liability would be correct in the case of an LLC which has "ceased to be in good standing" under the Act. However, once three years have passed from the due date for the fee or certificate, the Act plainly provides for a more serious penalty. That date triggers cancellation of the LLC. Indeed, following cancellation, filing the annual certificate is no longer required. 18 O.S.Supp.2004 § 2055.2(B). This indicates the Legislature's intent that cancellation means the LLC no longer exists.

¶ 12 Indeed, the Tenth Circuit Court of Appeals recognized that "(a)lthough not explicitly stated, it is reasonable to conclude that an L.L.C. *ceases to exist* when its articles of organization are cancelled." *In re Midpoint Development, supra,* 466 F.3d at 1204 (emphasis added). *Accord, Chadwick Farms Owners Ass'n v. FHC LLC,* 166

Wash.2d 178, 207 P.3d 1251 (Wash.2009). As noted in *Midpoint,* the Act provides "(a) limited liability company formed under this act is a separate legal entity, the existence of which as a separate legal entity continues until cancellation of the limited liability company's articles of organization." 18 O.S.Supp.2004 § 2004(B)(1). Winningham contends *Midpoint* is not relevant because that case involved an LLC which itself filed articles of *dissolution,* rather than being *cancelled* by the Secretary of State for failure to comply with the statute. However, the Act shows that dissolution (voluntary) and cancellation (involuntary) have the same result: the LLC ceases to exist. We are not persuaded that distinction matters.[6] We agree with the Tenth Circuit Court of Appeals' interpretation of the Act: once cancelled, an LLC is no longer a separate legal entity. The record does not show any dispute that AVA was

or substantially all of its assets, has caused the limited liability company to be reinstated as a domestic limited liability company in good standing ... in this state, as applicable.

G. A domestic *limited liability company not in good standing* for failure to file an annual certificate and pay the annual certificate fees or registered agent fees, *including a domestic limited liability company whose articles of organization have been cancelled under subsection B of Section 2012.1* of this title, ... *may apply to the Secretary of State for reinstatement* by:

1. Filing all delinquent annual certificates with the Secretary of State and paying all delinquent annual certificate fees or paying all delinquent registered agent fees to the Secretary of State; and

2. Filing an application for reinstatement with the Secretary of State stating its name at the time it ceased to be in good standing or was withdrawn, the date it ceased to be in good standing or was withdrawn, and its current name, if its name at the time it ceased to be in good standing or was withdrawn is no longer available under Section 2008 or 2045 of this title.

If the Secretary of State determines that the application contains the required information, the information is correct, all delinquent certificates or other filings are submitted, all delinquent fees are paid, and the name satisfies the requirements of Section 2008 or 2045 of this title, the Secretary of State shall accept the application for reinstatement and issue a certificate of reinstatement in the manner provided in Section 2007 of this title for domestic limited liability companies ... If the limited liability company is required to change its name because its name at the time it ceased to be in good standing or was withdrawn is no longer available, acceptance of the reinstatement shall constitute an amendment

to the domestic limited liability company's articles of organization to change its name ... The application for reinstatement may amend the articles of organization of the domestic limited liability company ... subject ... to the payment of the additional fee required in Section 2055 of this title for amendments; provided, that the application may not extend the term of a limited liability company that had expired before the application for reinstatement....

H. The failure of a domestic limited liability company ... to file an annual certificate and pay an annual certificate fee or a registered agent fee to the Secretary of State shall not impair the validity on any contract, deed, mortgage, security interest, lien or act of the domestic limited liability company ... or prevent the domestic limited liability company ... from defending any action, suit or proceeding with any court of this state.

I. A member or manager of a domestic limited liability company ... is not liable for the debts, obligations or liabilities of the domestic limited liability company ... solely by reason of the failure of the domestic limited liability company ... to file an annual certificate and pay an annual certificate fee or a registered agent fee to the Secretary of State or by reason of the domestic limited liability company ... ceasing to be in good standing or duly registered.

6. Nor are we persuaded by Winningham's claim that AVA was merely "suspended"-both because the Secretary of State record states that AVA was cancelled and because the Act does not include "suspension" as an action to which an LLC may be subject. If "suspended" is a valid status under the Act, then for it to mean what Winningham claims it means, it would have to be a synonym for "not in good standing" rather than for "cancelled" under the Act.

cancelled as an LLC during the time all of the contracts at issue in this case were executed. Accordingly, the liability shield afforded to members of LLCs was not in effect when the contracts were executed.

¶ 13 Winningham contends that AVA was reinstated after the contracts were executed, resulting in the liability shield being effective as if the LLC were never cancelled as a result of reinstatement. We disagree. The Act's provisions relating to reinstatement expressly address reinstatement *as an LLC.* The only evidence on this issue in this case is the Oklahoma Secretary of State Certificate, attached to the parties' summary judgment pleadings, which states that AVA was terminated May 17, 2004, cancelled July 1, 2007; and that AVA, *P.C.* filed Articles of Conversion and was incorporated July 14, 2009 "and is no longer an existing Domestic (LLC) ..." The Act was amended to allow reinstatement of LLCs effective January 1, 2010. 18 O.S.Supp.2008 § 2012.1(C) (effective January 1, 2010).[7] Therefore, at the time AVA became a corporation, reinstatement as an LLC was not possible. The Act now provides reinstatement does not extend the term of an

expired LLC. 18 O.S.Supp.2008 § 2055.2(G). This implies no relation back for liability purposes. And, the Act provides that reinstatement occurs, in part, by the Secretary of State issuing a certificate *for an LLC.*

■ ¶ 14 In this case, nothing in the record supports an inference that AVA sought reinstatement as an LLC after it was cancelled. AVA, LLC, was no longer in existence when it purported to "convert" to a corporation. It incorporated as a new entity. The Act provides that conversion of an LLC to another business entity does not require dissolution of the LLC. 18 O.S.Supp.2008 § 2054.2(E).[8] In this case, however, while AVA filed "articles of conversion," it had previously been cancelled and did not exist as a separate entity capable of either not dissolving or converting to a different type of entity. And, Section 2054.2(I) expressly states that the conversion of an LLC to another business entity *"shall not be deemed to affect* any obligations or liabilities of the (LLC) incurred before the conversion or *the personal liability of any person incurred before the conversion,* ..." (Emphasis added.)[9] For these reasons, we find AVA's

---

7. The language added to Section 2012.1(C) provides:

> A limited liability company whose articles of organization have been cancelled under subsection B of this section may apply for reinstatement under subsection G of Section 2055.2 of this title.

For the terms of Subsection 2055.2(G), see note 5 above. Pertinent to this issue, the amended statute provides, in part: "the application may not extend the term of a limited liability company that had expired before the application for reinstatement." While the term "expired" is new, we assume the Legislature intended to mean "dissolve" or "cancelled," *i.e.,* no longer in existence.

8. Section 2054.2(G) provides specific requirements for the contents of articles of conversion. Winningham has failed to include in the record the articles of conversion filed by AVA. We make no finding on whether AVA met the statutory requirements for conversion, beyond again recognizing that AVA was not an existing entity at the time it incorporated.

9. Indeed, even in the case of a suspended corporation, corporate officers remain liable for debts incurred during suspension and before reinstatement. *Bethlehem Steel Corp. v. Giese,* 1984 OK 28, 681 P.2d 769. It is settled that an agent's acts on behalf of a non-existent business entity do

not come with protection from liability offered by an existing business entity.

> Unless the third party agrees otherwise, a person who makes a contract with a third party purportedly as an agent on behalf of a principal becomes a party to the contract if the purported agent knows or has reason to know that the purported principal does not exist or lacks capacity to be a party to a contract.

Restatement (Third) of Agency § 6.04, *Principal Does Not Exist Or Lacks Capacity* (2006). *See also Bullington v. Palangio,* 345 Ark. 320, 45 S.W.3d 834, 838 (2001) (shareholder who undertook performance of construction contract following dissolution of corporation is subject to individual liability for breach of express and implied warranties); *Powell v. Jaysons Constr. & Interiors,* 185 Misc.2d 794, 713 N.Y.S.2d 802, 805 (Dist.2000) (individual who signed contract on behalf of corporation that had been dissolved is proper party defendant in action for breach of contract). *Cain v. State,* 882 S.W.2d 515, 519 (Tex.App.1994) (corporate officer personally liable for debt incurred to plug oil wells; debt came into existence after forfeiture of corporation's powers due to its failure to file franchise-tax return, when state regulatory agency ordered plugging and officer was responsible for seeing that corporation complied with its duty to plug wells).

incorporation after the contracts were executed does not shield Winningham from liability on contracts signed when no business entity, for which he purported to act, was in existence.

¶ 15 Having determined that AVA was not a separate legal entity at the time the contracts were entered and that AVA's later incorporation did not shield Winningham from liability on contracts he signed during the time AVA was not a separate legal entity, we are constrained to agree with the trial court that Winningham is liable for the amounts due under the contracts.

¶ 16 The undisputed facts in this case show that Winningham signed the contracts while no business entity offering limited liability was in existence and Winningham owed the amounts alleged due. AT & T was entitled to judgment as a matter of law and we AFFIRM.

JOPLIN, V.C.J., and MITCHELL, J. (sitting by designation), concur.